733 A.2d 593

COMMONWEALTH of Pennsylvania, Appellant,

v.

Donald Francis WILLIAMS, Appellee.

Commonwealth of Pennsylvania, Appellee,

v.

Donald Francis Williams, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 16, 1998.

Decided June 30, 1999.

Joseph P. Conti, Elvage G. Murphy, Marshall J. Piccinini, Erie, for Commonwealth. ·

Andrea F. McKenna, Intervenor Commonwealth.

Joseph Burt, Keith Clelland, Erie, for Donald Williams.

Kari Baker, for Defender Assoc. of Philadelphia.

Stefan Presser, American Civil Liberties Union.

Gary Neil Asteak, Public Defender Assoc. of PA, Amicus Curiae.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

ZAPPALA, Justice.

This matter is before us on direct appeal from the order of the Erie County Common Pleas Court dated September 23, 1997, granting Donald Francis Williams' motion for extraordinary relief, which challenged the constitutionality of the sexually violent predator provisions of Title 42, Sections 9791–9799.6, Subchapter H, entitled, Registration of Sexual Offenders, 42 Pa.C.S. §§ 9791–9799.6, commonly known as Pennsylvania's Megan's Law (hereinafter Act).[1]

The factual history of this case is as follows. On February 2, 1997, Appellee Williams was arrested and charged with numerous sexual offenses. On May 23, 1997, a criminal information was filed, charging Williams with two counts of involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123(a)(6), two counts of indecent assault, 18 Pa.C.S. § 3126(a)(7), and one count of corruption of minors, 18 Pa.C.S. § 6301(a). The charges stemmed from an allegation that Williams performed fellatio upon a nine year old male victim during the period between May 19, 1996 through December 23, 1996 and December 24, 1996 through December 31, 1996.

A jury found Williams guilty of the foregoing charges on July 15, 1997. Immediately following the verdict, the common pleas court ordered an evaluation of Williams pursuant to Section 9794(a) of the Act, which provides that

[a]fter conviction, but before sentencing, a court shall order a person convicted of a sexually violent offense specified in section 9793(b) (relating to registration of certain offenders

---

1. Following the abduction, murder and rape of seven-year-old Megan Kanka, New Jersey enacted the Registration and Community Notification Laws, Pub.L.1994, Chs. 128, 133 (codified at N.J.S.A. 2C:7–1 to 7–11) as part of a ten-bill package referred to as "Megan's Law." By May of 1996, based upon federal legislation conditioning certain federal funding on states passing a registration and notification program, forty-nine states adopted sex offender registration laws and thirty-two states maintained some form of community registration. See *E.B. v. Verniero,* 119 F.3d 1077, 1081 (3ᵈ Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). See also 42 U.S.C.A. § 14071.

for ten years) to be assessed by the [State Board to Assess Sexually Violent Predators].

Williams filed a motion for extraordinary relief raising numerous federal and state constitutional challenges to the sexually violent predator provisions of the Act, 42 Pa.C.S. § 9794–9799.6. Among the challenges made, Williams asserted that the Act violates his procedural due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution, because the Act impermissibly shifts the burden of persuasion to the offender by establishing a presumption that he is a sexually violent predator and requiring that he rebut the presumption by clear and convincing evidence. Section 9794(b) provides:

> An offender convicted of any offense set forth in section 9793(b) shall be presumed by the board and the court to be a sexually violent predator. This presumption may be rebutted by the offender by clear and convincing evidence at a hearing held in accordance with subsection (e).

42 Pa.C.S. § 9794(b).

By opinion and order dated September 23, 1997, the common pleas court held that

> [b]y shifting the burden of proof to the defendant such that s/he is presumed to be a sexually violent predator and by placing the burden of rebuttal of that presumption on the defendant, [the Act] violates the Fifth and Fourteenth Amendments to the United States Constitution and Section Nine of Article One of the Pennsylvania Constitution.

Slip op. at 19.[2] Accordingly, the common pleas court refused to proceed with an assessment of whether Williams is a sexually violent predator in accordance with the Act and sentenced Williams in conformity with the sentencing guide-

2. The court rejected all other constitutional claims raised by Williams regarding the Act. These included challenges concerning the Act's vagueness, the right against self-incrimination, and the right to counsel in the assessment process. The court also rejected the argument that the Act constitutes a bill of attainder and violates the right to privacy.

lines applicable to his convictions.[3] The common pleas court noted that the effect of its decision was to leave intact only the purpose, definition, registration and some administrative provisions of the Act. Slip op. at 20, n. 11.

The Commonwealth filed a direct appeal from the order of the common pleas court to this Court,[4] complaining that the common pleas court improperly declared the applicable provisions of the Act to be unconstitutional.[5] Before specifically addressing the arguments made by the Commonwealth regarding the constitutionality of the Act, a brief outline of its provisions and the statutory scheme set forth therein by the Legislature is instructive.

The Act is basically divided into two parts. Section 9794 of the Act and certain provisions that follow apply to those "offenders" who are designated "sexually violent predators." Section 9793 of the Act applies to "offenders" who are not classified as sexually violent predators. A person is an "offender" for purposes of the Act if he or she has been convicted of any of the offenses specified in Section 9793(b). Subsection (1) of Section 9793(b) lists applicable predicate offenses where the victim is a minor. The offenses specified include the crimes of kidnapping (except by a parent), rape, involuntary deviate sexual intercourse, aggravated indecent assault, promoting prostitution, and crimes relating to obscene and other sexual materials and performances involving minors. Subsec-

3. Williams received an aggregate sentence of 10 years, 9 months to 45 years imprisonment.

4. Pursuant to Section 722(7) of the Judicial Code, 42 Pa.C.S. § 722(7), this Court has exclusive jurisdiction of appeals from final orders of the common pleas court in

[m]atters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.

5. Williams filed a timely notice of appeal to the Superior Court from the trial court's decision and the Commonwealth filed a motion to quash the appeal. The Superior Court then transferred the matter here. On appeal, Williams asserts that the trial court erred in denying his remaining constitutional challenges to the Act; he also alleges various trial errors.

tion (2) sets forth predicate offenses involving victims of any age and includes rape, involuntary deviate sexual intercourse, aggravated indecent assault and spousal sexual abuse. Indecent assault is also a predicate crime when the offense is a misdemeanor of the first degree. 42 Pa.C.S. § 9793(b)(3).

A person who is convicted of any of the foregoing predicate offenses is presumed to be a sexually violent predator. 42 Pa.C.S. § 9794(b). The Act defines a "sexually violent predator" as

> [a] person who has been convicted of a sexually violent offense as set forth in section 9793(b) (relating to registration of certain offenders for ten years) and who is determined to be a sexually violent predator under section 9794(e) (relating to designation of sexually violent predators) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S. § 9792.

There is a distinct difference under the Act between the requirements and sanctions applicable to those persons who are classified as sexually violent predators and those who are not. Those offenders who are not classified as sexually violent predators are subject to the registration requirements set forth at Section 9793 of the Act. This provision requires that an offender register a current address with the Pennsylvania State Police upon release from incarceration, being placed on parole, the commencement of a sentence of intermediate punishment or probation, or under the parole board's supervision. The State Police must be notified of an offender's change of address and a current address must be registered. The period of registration under this provision is ten years and failure to comply with the provision is a felony of the third degree.[6]

---

6. The validity of the ten-year registration provisions is not before us. But see *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999), where we upheld these provisions when faced with an ex post facto challenge thereto.

If a person is classified as a sexually violent predator under the Act, he or she is subjected to much broader registration and notification requirements. Specifically, Section 9795(a) of the Act requires potentially lifetime registration of a current address with the State Police "unless the court determines the person is no longer a sexually violent predator." Verification of a current address is required every 90 days. 42 Pa.C.S. § 9796(a).

Section 9797(b) of the Act specifies that the crime victim of a sexually violent predator shall be given written notice when an offender registers an address initially, and when a change of address is provided. Section 9798(a) provides for extensive public notification of the name, address, offense, designation and photograph of sexually violent predators. Subsection (b) specifies that notification of the foregoing information is to be given to the neighbors of sexually violent predators, the director of county child and youth services where the sexually violent predator resides, the superintendent of each school district in the area, including private and parochial schools, the director of licensed day care facilities in the municipality where the sexually violent predator resides and the president of any college, university and community college located within 1,000 feet of a sexually violent predator's residence.

In addition to the foregoing, Section 9799.4(a) of the Act provides for enhanced punishment of sexually violent predators. Specifically, this section provides that once a person is classified as a sexually violent predator, "the offender's maximum term of confinement for any offense or conviction specified in section 9793(b)...shall be increased to the offender's lifetime notwithstanding lesser statutory maximum penalties for these offenses." Subsection (b) of this provision requires sexually violent predators to attend monthly counseling sessions and subsection (c) provides that

[n]otwithstanding any other provision of law to the contrary, when a person who has been designated as a sexually violent predator is convicted of a subsequent sexually vio-

lent offense, the mandatory sentence shall be life imprisonment. . . .

42 Pa.C.S. § 9799.4.

The issue here involves the constitutionality of the method by which offenders are designated sexually violent predators. As noted, once a person is convicted of one of the predicate offenses specified in Section 9793(b) of the Act, he or she shall be presumed to be a sexually violent predator. 42 Pa.C.S. § 9794(b). Despite the fact that this presumption attaches upon conviction, the Act requires that after conviction, but before sentencing, the State Board to Assess Sexually Violent Predators conduct an assessment to determine if the offender is a sexually violent predator.[7] Section 9794(c) of the Act lists ten factors that the Board should consider in making such determination.[8] The offender does not participate in the assessment proceeding by the Board.

Following its assessment, the Board is required to submit a written report to the trial court within 60 days of the offender's conviction. Section 9794(e) specifies that

[u]pon receipt of the Board's report, the trial court shall determine if the offender is a sexually violent predator. This determination shall be made based on evidence presented at a hearing held prior to sentencing and before the trial judge. The offender and district attorney shall be given notice of the hearing and an opportunity to be heard, the right to call witnesses, the right to call expert witnesses and the right to cross-examine witnesses. In addition, the offender shall have the right to counsel and to have a lawyer appointed to represent him if he cannot afford one. After a

7. The Board is to be composed of psychiatrists, psychologists and criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders. 42 Pa.C.S. § 9799.3(a).

8. These include the offender's age, any prior criminal record, the age of the victim, whether the offense involved multiple victims, the use of illegal drugs, whether the offender completed any prior sentence and attended sex offender programs, any mental illness or mental disability, the nature of the sexual contact and whether there is a demonstrated pattern of abuse, whether unusual cruelty was involved, and any behavior characteristics that contribute to the offender's conduct.

review of all evidence presented at this hearing, the court may determine whether the presumption arising under subsection (b) has been rebutted and shall set forth this determination on the sentencing order....

As noted, throughout the foregoing proceedings by the Board and the trial court, the presumption that the offender is a sexually violent predator continues. It is the offender who bears the burden of rebutting the presumption and the standard of proof required to rebut the presumption is clear and convincing evidence. 42 Pa.C.S. § 9794(b). It is these requirements that the trial court found offensive to procedural due process.

■ The Commonwealth and the Attorney General, as amicus, argue that the trial court erred in concluding that the proceeding to determine whether an offender is a sexually violent predator is violative of procedural due process. While both concede that a sentencing proceeding is subject to the requirements of due process, they maintain that because the presumption that an offender is a sexually violent predator arises after an offender has been found guilty beyond a reasonable doubt of one of the enumerated offenses specified in the Act, the full panoply of procedural rights are no longer due. Moreover, they maintain that the Act comports with due process in that it provides an offender with specific due process protections including the right to present evidence and call witnesses before the factfinder, the right to present expert witnesses and cross-examine witnesses, and the right to have counsel present, including the right to have counsel appointed.

Both the Commonwealth and the Attorney General liken the sexually violent predator provisions of the Act to the mandatory minimum sentencing provision that withstood constitutional scrutiny by this Court and the United States Supreme Court in *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985), affirmed *McMillan et al. v. Commonwealth,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

To the contrary, Appellee and amici, the American Civil Liberties Union of Pennsylvania and the Public Defender

Association of Pennsylvania, argue that the procedure whereby it is determined whether an offender is a sexually violent predator under the Act is more akin to the provisions struck down as violative of due process by the United States Supreme Court in the case of *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); see also *Gerchman v. Maroney,* 355 F.2d 302 (3 rd Cir.1966), and *Commonwealth v. Dooley,* 209 Pa.Super. 519, 232 A.2d 45 (1967).

In *Wright,* we upheld the constitutionality of Section 9712 of the Mandatory Minimum Sentencing Act, 42 Pa.C.S. § 9712, which requires the imposition of a minimum sentence of five years' total confinement upon a finding that a person was in visible possession of a firearm during the commission of certain felonies. At issue was subsection (b) of Section 9712, which provides:

(b) Proof of sentencing.—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

There, we addressed five consolidated decisions concerning the constitutionality of Section 9712. In all five cases, the defendants had been convicted of one of the enumerated offenses set forth at Section 9712 and the Commonwealth sought to proceed thereunder. In four of the decisions under review, the trial court determined the provision to be unconstitutional and declined to apply Section 9712. In the remaining case, a constitutional challenge was rejected and the defendant was sentenced to the mandatory minimum sentence of five years' imprisonment.

The trial courts that found this section to be constitutionally infirm did so based upon the conclusion that the preponder-

ance standard is violative of procedural due process, because, contrary to the statutory language, visible possession of a firearm is an element of the crime for which the defendant is being sentenced. Accordingly, in compliance with the United States Supreme Court's decisions in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the courts held that proof beyond a reasonable doubt of this fact was required.[9]

We rejected this rationale, noting that the statutory language explicitly provides that visible possession of a firearm is not an element of the crime and that the reasonable doubt standard, traditionally, has been dependent on "how a state defines the offense." *Wright*, 508 Pa. at 34, 494 A.2d at 359, quoting *Patterson v. New York*, 432 U.S. 197, 211, n. 12, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). We stressed that Section 9712 comes into play only after there has been a conviction of one of the underlying enumerated felonies and that there is neither an increase in the maximum sentence for such felony nor a separate sentence imposed. We noted,

[i]n making visible possession of a firearm a sentencing factor to be considered only after conviction of specified offenses, the legislature has in no way relieved the prosecution of its burden of proving guilt. Section 9712 creates no presumption as to any essential fact and places no burden on the defendant. Thus under *Winship*, *Mullaney* and *Patterson* the Due Process Clause does not require that visible possession be treated as an element of the underlying offense to be proved beyond a reasonable doubt.

*Wright* 508 Pa. at 35–36, 494 A.2d at 358.

The United States Supreme Court upheld our decision in *Wright*, also noting that because visible possession of a fire-

9. In *Winship*, 397 U.S. at 364, 90 S.Ct. 1068, the Court stated:

Lest there be any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

arm is not an element of the underlying crimes, which, undoubtedly, the state must prove beyond a reasonable doubt, but instead is a sentencing factor that comes into play only after the defendant has been found guilty, the convicted defendant is not entitled to the full panoply of due process protections. The Court noted:

> Indeed, the elements of the enumerated offenses, like the maximum permissible penalties for those offenses, were established long before the Mandatory Minimum Sentencing Act was passed. While visible possession might well have been included as an element of the enumerated offenses, Pennsylvania chose not to redefine those offenses in order to so include it, and Patterson teaches that we should hesitate to conclude that due process bars the State from pursuing its chosen course in the area of defining crimes and prescribing penalties.

*McMillan*, 477 U.S. at 86, 106 S.Ct. 2411. The Court, however, recognized that in certain circumstances, the State's authority in this regard was not unlimited:

> [O]f course, there are constitutional limits to the State's power in this regard; in certain limited circumstances *Winship's* reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged.

*Id.*

Finally, the Court noted that the situation a convicted defendant faced pursuant to Pennsylvania's Mandatory Minimum Sentencing Act was quite unlike the situation faced by a criminal defendant in *Mullaney,* where the Court struck down Maine's homicide statute. In *Mullaney,* a single generic offense of felonious homicide was enacted with three "punishment categories" based on degree of culpability. Under the statute, intent was not an element of the crime, but had bearing only on the appropriate punishment category. As a result, "Maine could impose a life sentence for any felonious homicide—even one that traditionally might be considered involuntary manslaughter—unless the defendant was able to prove that his act was neither intentional nor criminally reckless." *Mullaney,* 421 U.S. at 699, 95 S.Ct. 1881 (emphasis

in original) (footnote omitted). In distinguishing the facts in *McMillan*, the Court noted:

> The Court in *Mullaney* observed, with respect to the main criminal statute invalidated in that case, that once the State proved the elements which Maine required it to prove beyond a reasonable doubt the defendant faced "a differential in sentencing ranging from a nominal fine to a mandatory life sentence." 421 U.S. at 700, 95 S.Ct. 1881. In the present case the situation is quite different. . . . Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the specified finding of visible possession of a firearm. Section 9712 "ups the ante" for the defendant only by raising to five years the minimum sentence which may be imposed within the statutory plan. The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense. Petitioner's claim that visible possession under the Pennsylvania statute is "really" an element of the offenses for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment. . . but it does not.

*McMillan*, 477 U.S. at 87–88, 106 S.Ct. 2411 (footnote omitted) (citation omitted).

In *Specht*, which was decided before *McMillan* and upon which Appellee relies, the United States Supreme Court struck down Colorado's Sex Offenders Act as violative of procedural due process. The petitioner in *Specht* was convicted of the crime of indecent liberties under a Colorado statute which provided a maximum sentence of 10 years; he was, however, sentenced under the Sex Offenders Act for an indeterminate term of from one day to life imprisonment. The Sex Offenders Act was implicated where the trial court believed that a person convicted of specified sex offenses, "if at

large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." *Id.*, 386 U.S. at 607, 87 S.Ct. 1209.

The petitioner's complaint stemmed from the proceedings whereby the critical finding to be made under the Sex Offenders Act was reached without a hearing or the right to confront witnesses. The Court, in finding the proceedings under the Colorado Act to be unconstitutional, held:

> These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment...and to the Due Process Clause. We hold that the requirements of due process were not satisfied here. The Sex Offenders Act does not make the commission of a specified crime the basis for sentencing. It makes one conviction the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill. *That is a new finding of fact that was not an ingredient of the offense charged.* The punishment under the second Act is criminal punishment even though it is designed not so much as retribution as it is to keep individuals from inflicting future harm.

*Id.* at 609, 87 S.Ct. 1209 (citations omitted) (footnote omitted) (emphasis added).

Prior to the Court's decision in *Specht*, the Court of Appeals for the Third Circuit struck down a similar provision in this State's Barr–Walker Act. The Third Circuit's analysis focused on the penal nature of the proceedings under Barr–Walker in finding the Act to be invalid.

> The Act leaves no doubt, both in its language and its purpose, that it is a criminal statute and that what is imposed under its authority is criminal punishment. Its title and its text are replete with language which reveals that the proceeding is penal in nature. It may be invoked only after a precedent conviction of guilt of one of the specified crimes and prescribes a new and radically different punishment. A maximum sentence of life imprisonment is

made mandatory and from it the defendant may only be released on the determination by the Pennsylvania Board of Parole that the "interest of justice" so dictates. It is true that the Act provides for periodic psychiatric and psychological examinations which the Board of Parole is to review. But it is no less a criminal proceeding and no less the infliction of criminal punishment because the Act provides for such studies, especially when this is accompanied by the drastic potential of life imprisonment if they do not affirmatively provide a basis for release. This criminal punishment does not lose its characteristic because the Act goes beyond simple retribution. "It would be archaic to limit the definition of 'punishment' [under the Bill of Attainder Clause] to 'retribution.' Punishment serves several purposes; retributive, rehabilitative, deterrent—and preventive. One of the reasons society imprisons those convicted of crimes is to keep them from inflicting future harm, but that does not make imprisonment any the less punishment."

*Gerchman*, 355 F.2d at 309–310, citing *United States v. Brown*, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

Agreeing with the Third Circuit's analysis, the *Specht* Court noted what process is due under the statutory scheme set forth by the Colorado and Pennsylvania legislatures:

It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes. Petitioner therefore was entitled to a full judicial hearing before the magnified sentence was imposed. At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him.

*Id.*, 386 U.S. at 608–609, 87 S.Ct. 1209, citing *Gerchman*, 355 F.2d at 312.

As noted, the Court had the benefit of its *Specht* decision when reviewing our determination in *Wright.* A similar argument to the one advanced by Appellee here, i.e., that *Specht* requires that the Act be invalidated, was put forth by the petitioners in *Wright/McMillan.* The Court, however, distinguished the post-trial proceeding in *Specht* from the one faced by the petitioners in *Wright/McMillan.*

> [T]he Court in *Specht* observed that following trial the Colorado defendant was confronted with "a radically different situation" from the usual sentencing proceeding. The same simply is not true under the Pennsylvania statute. The finding of visible possession of a firearm of course "ups the ante" for a defendant, or it would not be challenged here; but it does so only in the way that we have previously mentioned, by raising the minimum sentence that may be imposed by the trial court.

*McMillan,* 477 U.S. at 89, 106 S.Ct. 2411.

Finally, the *McMillan* court recognized that analysis in this area is dependent upon differences of degree in the statutory scheme set forth by state legislatures.

> [W]e have noted a number of differences between this case and *Winship, Mullaney,* and *Specht,* and we find these differences controlling here. Our inability to lay down any "bright line" test may leave the constitutionality of statutes more like those in *Mullaney* and *Specht* than is the Pennsylvania statute to depend on differences of degree, but the law is full of situations in which differences of degree produce different results. We have no doubt that Pennsylvania's Mandatory Minimum Sentencing Act falls on the permissible side of the constitutional line.

*Id.* at 91, 106 S.Ct. 2411.

Given the foregoing guidance, just as the Court in *McMillan* had no doubt that this State's Mandatory Minimum Sentencing Act fell on the permissible side of the constitutional line, we have no doubt that the sexually violent predator provisions of the Act fall on the impermissible side.

Initially, we note that the proceedings whereby one is determined to be a sexually violent predator set forth in the Act are more akin to the provisions found in *Specht* and *Gerchman* than the provision at issue in *McMillan.* As in *Specht* and *Gerchman*, the determination of whether one is a sexually violent predator is a separate factual question that commences following an offender's conviction of one of the specified offenses found in the Crimes Code. Specifically, the court is faced with factually determining whether the convicted offender is a person who "due to a mental abnormality or personality disorder ...[is] likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9792. The Act defines mental abnormality as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.*

Once the foregoing factual determination is made, the sexually violent predator is subjected to heightened criminal punishment pursuant to the Act. Specifically, as previously noted, the mandatory maximum penalty for conviction of a predicate offense is increased to the offender's lifetime. 42 Pa.C.S. § 9799.4(a). Moreover, a subsequent conviction subjects the offender to a mandatory sentence of life imprisonment. 42 Pa.C.S. § 9799.4(c). Thus, despite the fact that the legislature intended that the Act serve as "a means of assuring public protection," by increasing the punishment for the listed predicate offenses where the offender is determined to be a sexually violent predator, the goals of the sexually violent predator provisions are equally punitive.[10] Unlike the situation in

**10.** We wish to note that the "Declaration of policy" set forth by the Legislature at Section 9791(b) of the Act merely references the registration and notification provisions and the goals sought by the Legislature regarding their enactment. Section 9791(b) provides:

It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is

*Wright/McMillan*, where a person found to be in visible possession of a firearm was required to be sentenced to a minimum term of 5 years, a sentence encompassed within the purview of the sentencing guidelines for the crimes charged, the Act expands the maximum sentence to be imposed for the predicate crimes to a mandatory life sentence if the offender is found to be a sexually violent predator.[11]

The Commonwealth argues that *Specht* is distinguishable from the facts here because the Colorado statute at issue failed to provide a convicted defendant with a right to be present, to be heard or to confront and cross-examine witnesses regarding the relevant factual determination in that case (i.e., whether a person convicted of specified sex offenses, "if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill.") *Specht*, 386 U.S. at 607, 87 S.Ct. 1209. The Commonwealth points out that pursuant to the Act, an offender is given notice

further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to member of the general public as a means of assuring public protection and shall not be construed as punitive.

The Act is silent with respect to the Legislature's intention regarding the increased criminal sanctions to be imposed upon sexually violent predators; however, as noted by the *Gerchman* court, "[o]ne of the reasons society imprisons those convicted of crimes it to keep them from inflicting future harm, but that does not make imprisonment any the less punishment." *Gerchman*, 355 F.2d at 310.

Given that we view the increased criminal sentencing provisions applicable to sexually violent predators to be punitive, we need not reach the additional argument put forth by Appellee that the enhanced notification provisions imposed on those who are deemed to be sexually violent predators are, likewise, punitive.

11. The predicate offenses listed in Section 9793(b) range from a misdemeanor of the first degree to a felony of the first degree. See 18 Pa.C.S. § 2901 (kidnapping, F–1), § 3121 (rape, F–1), § 3123 (involuntary deviate sexual intercourse, F–1), § 3125 (aggravated indecent assault, F–2), § 3128(a) & (b) (spousal assault, F–2), § 5902(b) (prostitution, F–3), § 5903(a)(3), (4), (5) or (6) (relating to obscene and other sexual materials and performances, M–1). The maximum sentence for a misdemeanor of the first degree is 5 years' imprisonment. 18 Pa.C.S. § 1104(1). The maximum sentence for a felony in the first degree, the most serious offense, is 20 years' imprisonment. 18 Pa.C.S § 1103(1).

of the hearing wherein the trial court is to determine whether he or she is a sexually violent predator. Also, an offender is provided an opportunity to be heard, confront witnesses and be represented by counsel. 42 Pa.C.S. 9794(e). Thus, the Commonwealth argues that sufficient due process is afforded to an offender pursuant to the Act unlike under the Colorado provision at issue in *Specht.*

Initially, we point out that although a convicted offender is afforded the foregoing procedural rights at the hearing before the trial court, because of the presumption set forth in the Act, he or she is already considered to be a sexually violent predator and is, essentially, afforded no due process regarding this finding. The due process rights afforded an offender at the hearing before the trial court are granted for the purposes of providing an offender the opportunity to rebut the presumption that he or she is a sexually violent predator.

Additionally, contrary to the Commonwealth's assertion that the Act is constitutionally sound because an offender is afforded some due process protections, the *Specht* court was not concerned with the convicted offender under the Colorado scheme receiving *some form* of due process rights. To the contrary, given that the Court viewed the proceeding set forth in the act as a separate fact finding endeavor, the end result of which subjected the defendant to additional criminal punishment, the Court agreed with the court in *Gerchman* that "[a]t such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to *the full panoply of relevant protections* which due process guarantees in state criminal proceedings." *Specht,* 386 U.S. at 608–609, 87 S.Ct. 1209, citing *Gerchman,* 355 F.2d at 312.

As the foregoing reveals, the *Specht* Court would not have been satisfied with a convicted defendant receiving partial due process protections under the statutory scheme set forth by the Colorado Legislature.[12] Nevertheless, this is precisely

12. We are not unaware that *Winship* was decided after *Specht.* Nevertheless, it is without question that the due process considerations articulated by the Court in *Winship* are part and parcel to the "full

what the Commonwealth advocates here. Given our view, however, that the proceeding set forth in the Act to determine whether one is a sexually violent predator is a separate factual determination, the end result of which is the imposition of criminal punishment, we hold that anything less than the full panoply of the relevant protections which due process guarantees is violative of the Fourteenth Amendment. Accordingly, we find the Act's imposition of the presumption that a person convicted of a predicate offense is a sexually violent predator, and the requirement that the offender rebut the presumption, to be constitutionally repugnant.[13]

 We are aware that in analyzing the constitutionality of any statutory provision, there is a strong presumption that legislative enactments do not violate the constitution. *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996). There is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. *Id.* Moreover, a statute "will only be found unconstitutional if it clearly, palpably and plainly violates the constitution." *Id.*, citing *Commonwealth v. Mikulan*, 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983).

Nevertheless, even if we were to view the post-conviction proceeding set forth in the Act to be a mere sentencing proceeding where the court is charged with considering sentencing factors as advocated by the Commonwealth, we are

panoply of relevant protections which due process guarantees in state criminal proceedings." Thus, we find unpersuasive any argument that the due process considerations advocated in *Winship* are somehow inapplicable where it is determined that one is entitled to the full panoply of due process protections.

13. While it is not our province to guide the legislature in drafting relevant legislation, we point out that the United States Supreme Court recently upheld Kansas's Sexually Violent Predator Act in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), where a substantive due process challenge was raised. There, Kansas specified civil commitment for those offenders found to be sexually violent predators due to a "mental abnormality." Significantly, pursuant to the scheme set forth by the Kansas Legislature, if civil commitment is sought, a trial is conducted and the burden of proving beyond a reasonable doubt whether the individual is a sexually violent predator is upon the State. See *id.* at 353, 117 S.Ct. 2072.

still not persuaded that the statutory scheme set forth by the Legislature in the Act is constitutionally sound.

In *Wright*, this Court discussed whether the preponderance of the evidence standard set forth at Section 9712(b) satisfied the dictates of due process. Initially, we recognized that even in a sentencing proceeding, due process requirements are applicable. We noted:

> [I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel. *Mempa v. Rhay*, 389 U.S. 128 [88 S.Ct. 254, 19 L.Ed.2d 336] (1967); *Specht v. Patterson*, 386 U.S. 605 [87 S.Ct. 1209, 18 L.Ed.2d 326] (1967). The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process. See *Witherspoon v. Illinois*, 391 U.S. 510, 521–523 [88 S.Ct. 1770, 20 L.Ed.2d 776] (1968); *Gardner v. Florida*, 430 U.S. 349, 358 [97 S.Ct. 1197, 51 L.Ed.2d 393] (1977) (footnote omitted).

Although sentencing proceedings must comport with due process, the convicted defendant need not be accorded the "entire panoply of criminal trial procedural rights." *Id.* at 358 n. 9. As the United States Supreme Court has explained:

> Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation to authority that due process is flexible and calls for such procedural protections as the particular situation demands. . . . Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

*Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

*Id.* 508 Pa. at 36–37, 494 A.2d at 359–360.

We then set forth the relevant due process considerations when evaluating the appropriate standard of proof in a given situation. Citing the analysis set forth by the United States Supreme Court in *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), we noted:

> In *Addington v. Texas* 441 U.S. 418 [99 S.Ct. 1804, 60 L.Ed.2d 323] (1979), the Court, by unanimous vote of the participating Justices, declared: "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington* teaches that, in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants.
>
> Thus, while private parties may be interested intensely in a civil dispute over money damages, application of a "fair preponderance of the evidence" standard indicates both society's "minimal concern with the outcome," and a conclusion that the litigants should "share the risk of error in roughly equal fashion." When the State brings a criminal action to deny a defendant liberty or life, however, "the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment." The stringency of the "beyond a reasonable doubt" standard bespeaks the "weight and gravity" of the private interest affected, society's interest in avoiding erroneous convictions, and a judgment that those interests together require that "society impos(e) almost the entire risk of error upon itself."

The "minimum requirements [of procedural due process] being a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." Moreover, the degree of proof required in a particular type of proceeding "is the kind of question which has traditionally been left to the judiciary to resolve." "In cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual liberty.'

This Court has mandated an intermediate standard of proof—"clear and convincing evidence"—when the individual interests at stake in a state proceeding are both "particularly important" and "more substantial than mere loss of money." Notwithstanding "the state's 'civil labels and good intentions,'" the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" or "stigma."

*Wright,* 494 A.2d at 359–361 (footnotes omitted), citing *Santosky v. Kramer,* 455 U.S. 745, 754–756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (citation omitted).

In *Mathews v. Eldridge,* 424 U.S. 319, 334–335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court articulated the specific factors courts should consider in determining the appropriate standard of proof required by the Fourteenth Amendment:

[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In *Wright,* we compared the liberty interest of a defendant convicted of a serious felony, whose right to remain free from confinement has been extinguished and whose maximum permissible term of imprisonment remained unaffected, with the Commonwealth's countervailing and important interest in seeking to protect the public from armed criminals and to deter violent crime and the illegal use of firearms generally. In weighing the two, we held that

> it is reasonable for the defendant and the Commonwealth to share equally in any risk of error which may be present in the factfinding process. In the context of a section 9712 proceeding, moreover, the risk of error is slight. Visible possession of a firearm is a straightforward issue susceptible of objective proof. There is scant potential that suspicion and conjecture will enter into the factfinder's decision. In addition, evidence of visible possession is amenable to meaningful appellate review.

*Wright,* 494 A.2d at 362.

More recently, the Third Circuit in *Verniero,* engaged in the foregoing analysis in relation to New Jersey's Registration and Community Notification Laws, i.e., Megan's Law. While there are many differences between New Jersey's registration and notification provisions and the Act established by our Legislature, many relevant similarities exist between the two statutes. For example, similar to our Act, under the statutory scheme set forth by New Jersey's Legislature, all persons convicted of a designated predicate crime involving sexual assault are subjected to certain registration requirements.[14] Pursuant to New Jersey's scheme, this information provides a basis for further community notification. The prosecutor of the county where the registrant intends to reside and the prosecutor from the county of conviction then use the registration information to assess the risk of re-offense by a registrant. Three tiers regarding a registrant's likelihood of re-

14. The registration requirements found in New Jersey's Act were upheld by the Third Circuit in *Artway v. Attorney General,* 81 F.3d 1235 (3 rd Cir.1996).

offending are established, tier 1 representing a low risk of re-offense and tier 3 representing a high risk.

The extent of the public notification required of a particular registrant depends upon the classification established by the prosecutors. Under tier 1, only law enforcement officials are notified of a registrant's whereabouts. Tier 2 and 3 require more extensive public notification to schools, community orga-nizations, day care centers and other organizations. Unlike our Act, New Jersey's Act does not provide for an increase in the mandatory maximum sentence for those found to be at a moderate (tier 2) or high (tier 3) risk for re-offending.

Under amended procedures established by New Jersey's Supreme Court, the state was required to make available a pre-notification judicial review process for sex offenders who wished to contest their classification or the notification plan. See *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367, 382 (1995). Similar to our Act, the registrant at such proceeding bore the burden of persuasion. The standard of proof required under New Jersey's scheme was a preponderance of the evidence.

The *Verniero* court held that the foregoing scheme violated the procedural due process rights of a registrant. Initially, the court concluded that the notification provisions applicable to tier 2 and 3 registrants are non-punitive. *Verniero*, 119 F.3d at 1105. Next, the court applied the test set forth in *Mathews*, observing that

> [n]otification puts the registrant's livelihood, domestic tran-quility, and personal relationships all around him in grave jeopardy. This jeopardy will not only extend to virtually every aspect of the registrant's everyday life, it will also last at least 15 years. As the New Jersey Supreme Court recognized in *Doe*, a registrant thus has a compelling inter-est in an accurate and reasonable disposition of the issues before the court in a Megan's Law hearing.

*Id.* at 1107. The court then noted the state's "compelling interest in protecting its citizens by giving prompt notification to potential victims and relevant caregivers with respect to registrants who are accurately determined to be Tier 2 or Tier

3." *Id.* Conversely, the court recognized that "the state has no substantial interest in notifying persons who will not come into contact with the registrant; nor has it any interest in notifying those who will come into contact with a registrant who has erroneously been identified as a moderate or high risk." *Id.* at 1107–1108. Given the foregoing competing interests, the court concluded that the burden of proof must remain with the state if the risk of error will be materially reduced without materially impairing the state's ability to secure a prompt determination and without imposing substantial new administrative burdens. *Id.*

The court then noted that an assessment of the future dangerousness of a particular registrant is a necessary inquiry at the "Megan's Law hearing," an undertaking "involving substantial uncertainty." The court observed that the fact-finding function involved is made difficult because sex crimes generally have a limited number of witnesses which creates the need for credibility determinations. Further, the issues are resolved in a proceeding in which the rules of evidence are not applied and the proceedings have a strict timetable. Thus, the court concluded that placing the burden of persuasion on the prosecutor will substantially reduce the risk of an erroneous outcome. The court noted:

> Courts are human institutions and there is, of course, risk of error in every judicial proceeding.... When the court in a Megan's Law hearing simply cannot tell which of two conflicting accounts (regarding the use of force, perhaps) represents the historical truth, allocation of the burden of persuasion is likely to be outcome determinative. The same is true in those cases in which the trier of fact finds inconsistencies or implausible elements in the victim's account, but, at the same time, is inclined to discount the registrant's account because of his criminal history or the enormity of his stake in the outcome. In these cases, as well as others in which the trier of fact discounts the account of the registrant for similar reasons, requiring the prosecutor to

affirmatively convince the court of the important facts can be expected to materially reduce the risk of error.

*Id.* at 1109.

Finally, the *Verniero* court concluded that assignment of the burden of proof to the state would not materially impair the state's ability to receive a prompt determination or impose new administrative burdens.

Although we are not bound by the Third Circuit's analysis of New Jersey's Megan's Law, and despite the differences between the two provisions, we find the foregoing analysis to be equally applicable to the sexually violent predator provisions found in the Act, if not more so.[15]

Notwithstanding the private interest in avoiding the mandatory maximum life sentence applicable to sexually violent predators, the private concerns articulated by the *Verniero* court apply equally to the notification provisions applicable to sexually violent predators. One's livelihood, domestic tranquility and personal relationships are unquestionably put in jeopardy by the notification provisions. Conversely, as noted in *Verniero,* the state has a compelling interest in protecting its citizens by providing prompt information to potential victims of sexually violent predators. The state, however, has no legitimate interest in notifying the public of those persons who have been erroneously identified as sexually violent predators. Thus, the state has an interest in assuring that the classification system is both fair and accurate.

Unlike the situation in *Wright/McMillan,* where the determination of whether one was in visible possession of a firearm was a "straightforward issue susceptible of objective proof" and where "the risk of error [was] slight," here, as in *Verniero,* a subjective assessment of an offender's potential future

**15.** The Superior Court likewise found the *Verniero* court's analysis regarding whether the state or the offender should bear the burden of proof at the sexually violent predator hearing to be persuasive. See *Commonwealth v. Halye,* 719 A.2d 763 (Pa.Super.1998) (where the court struck as unconstitutional Section 9794 and all remaining provisions of the Act that refer to the designation of a sexually violent predator).

dangerousness is a necessary inquiry in determining whether one is a sexually violent predator. As noted, the Board, in making its assessment considers a variety of elements in reaching its determination regarding whether an offender is a sexually violent predator. Additionally, just as in *Verniero*, the evidence that could be presented at the sexually violent predator proceeding may not have been presented at trial and will largely consist of the testimony of the offender and the victim. Resolution of issues regarding the evidence presented at the proceeding are not subject to the rules of evidence according to the Act and the court is under a time restriction to conduct the proceeding. Accordingly, the risk of an error at a sexually violent predator proceeding is far greater than was present in *Wright/McMillan*.

Given the foregoing analysis, we believe that the state must bear the burden of demonstrating that an offender is a sexually violent predator.[16] Where resolution of competing facts is outcome determinative, "requiring the prosecutor to affirmatively convince the court of the important facts can be expected to materially reduce the risk of error." *Verniero*, 119 F.3d at 1109.

Based on the foregoing, we find the sexually violent predator provisions of the Act to be violative of the procedural due process guarantees of the Fourteenth Amendment.[17] Accordingly, we strike all of the relevant provisions of the Act

16. We do not perceive any material impairment to the state's ability to receive a prompt determination of the issues involved. All of the relevant information available to the board in issuing an assessment would also be available to the prosecution. Moreover, we do not find that placing the burden of proof on the state at the sexually violent predator proceeding would impose new administrative burdens. In fact, because the state would be in a position to forgo pursuing an inquiry before the trial court where the state did not perceive the offender to be a sexually violent predator, placing the burden on the state could actually reduce the administrative burdens involved.

17. Because we conclude that the trial court properly determined that the Act is violative of the procedural due process requirements of the Fourteenth Amendment, we need not address the remaining constitutional challenges raised, or analyze the due process provisions of the State Constitution since the federal constitution establishes certain "minimum" standards, which each state has the power to expand. See *Commonwealth v. Edmunds*, 526 Pa. 374, 394, 586 A.2d 887 (1991).

pertaining to sexually violent predators and remand the matter to the Superior Court for further disposition of the remaining issues raised on appeal.[18]

Jurisdiction relinquished.

Justice CASTILLE files a Dissenting Opinion.

## DISSENTING OPINION

CASTILLE, Justice.

I respectfully dissent because I do not believe that the provisions of the Registration of Sexual Offenders Act, commonly known as Pennsylvania's Megan's Law, 42 Pa.C.S. §§ 9791–9799.6, ("Act"), which impose the presumption that a person convicted of a sexually violent offense is a sexually violent predator and require the offender to rebut the presumption by clear and convincing evidence, violate the procedural due process guarantees of the Fourteenth Amendment to the United States Constitution.[1] The majority espouses that these provisions of the Act create an additional element to the predicate offenses which subjects the offender to additional punishment. Therefore, according to the majority, an offender subjected to these provisions is entitled to due process of law, which the Act fails to provide.

I agree with the majority that the Act is punitive insofar as it mandates sentences of imprisonment.[2] However, contrary to the majority, I believe that the Act is a mere sentencing scheme and does not create a separate criminal offense.

**18.** We are not unaware that the statutory notes following Section 9791 of the Act specify that the provisions of the Act are to be construed as severable; however, because we find that the procedure whereby one is determined to be a sexually violent predator is unconstitutional, we strike all of the provisions referring to this designation.

**1.** The majority opinion rests solely on the Fourteenth Amendment to the United States Constitution and does not address the due process provisions of the Pennsylvania Constitution.

**2.** Sections 9799.4(a) and (c) require a mandatory maximum sentence of life imprisonment for sexually violent predators, and an automatic life sentence for sexually violent predators who are convicted of a subsequent sexually violent offense.

Therefore, while an offender subject to the Act is entitled to due process, I believe that the Act provides all the process that is due.

Under the Act, if an offender is convicted of one of the predicate offenses listed in section 9793(b)(1),[3] the State Board to Assess Sexually Violent Predators ("Assessment Board") conducts an assessment of the offender prior to the imposition of sentence.[4] The Act defines a sexually violent predator as "[a] person who has been convicted of a sexually violent offense as set forth in section 9793(b) (relating to registration of certain offenders for ten years) and who is determined to be a sexually violent predator under section 9794(e) (relating to designation of sexually violent predators) due to mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9792. Accordingly, not all individuals who commit crimes of sexual violence are ultimately deemed sexually violent predators.

The Assessment Board gathers information on the offender for the purpose of determining whether the offender is a sexually violent predator. The Assessment Board considers the various factors set forth in section 9794(c), including the circumstances surrounding the crime, the defendant's psychological evaluations, participation in treatment programs, ages of the offender and victim, the offender's prior criminal record, drug history, behavioral characteristics and relationship to the victim. 42 Pa.C.S. § 9794(c).

3. The predicate offenses are broken down into those involving minors and those involving victims of any age. The predicate offenses involving minors include kidnapping by someone other than a parent, rape, involuntary deviate sexual intercourse, aggravated indecent assault, promoting prostitution, and crimes relating to obscene and other sexual materials and performances. 42 Pa.C.S. § 9793(b)(1). The offenses involving a victim of any age include rape, involuntary deviate sexual intercourse, aggravated indecent assault, spousal sexual abuse and indecent assault which constitutes a first degree misdemeanor. 42 Pa.C.S. § 9793(b)(3).

4. The Assessment Board consists of psychiatrists, psychologists, and criminal justice experts, each of whom is an expert in the field of behavior and treatment of sexual offenders. 42 Pa.C.S. § 9799.3(a).

The trial court then conducts a hearing wherein the offender has the burden to overcome the presumption that he is a sexually violent predator by clear and convincing evidence. The offender is entitled to and is afforded notice prior to the hearing. At the hearing, the offender has the right to have counsel present and to have counsel appointed if needed, as well as the right to present evidence, to call witnesses, to cross-examine the witnesses against him and to present expert testimony. 42 Pa.C.S. § 9794(c).

When evaluating the constitutionality of any statute, there is a strong presumption in the law that legislative enactments do not violate the constitution. *Commonwealth v. Barud,* 545 Pa. 297, 304, 681 A.2d 162, 165 (1996). Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. *Id.* In order to successfully challenge a statute, the challenger must prove that the statute "clearly, palpably and plainly violates the Constitution." *Appeal of Torbik,* 548 Pa. 230, 239, 696 A.2d 1141, 1145 (1997). Any uncertainty must be resolved in favor of the validity of the statute. *Id.* While penal statutes are to be strictly construed, the courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute. *Barud,* at 304, 681 A.2d at 165. It is with these standards in mind that I find fault with the majority's conclusion that the provisions of the Act in question are violative of due process. Initially, the Act does not deprive an offender of due process of law by presuming that he is a sexually violent predator following his conviction for a sexually violent offense. A statutory presumption may be sustained if there is a rational relationship between the fact proved and the ultimate fact presumed. *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). "The process of making the determination of rationality is, by its nature, highly empirical." *United States v. Gainey,* 380 U.S. 63, 67, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965). This Court must give significant weight to the conclusions of the legislature concerning matters that are commonplace or not within specialized judicial competence. *Id.*

Here, the presumption that one who commits a sexually violent crime is a sexually violent predator is a sound presumption supported by rational legislative findings. Section 9791(a)(2) of the Act provides that "sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments and that protection of the public from this type of offender is a paramount governmental interest." The legislature's determination regarding the risk of recidivism among sexually violent criminals merits our deference under the rational relationship standard.

The presumption that an offender is a sexually violent predator is rebuttable. The Act affords due process to the offender by providing him with an opportunity to be assessed by members of an Assessment Board whose findings are reviewed by the trial court. The offender is afforded a hearing wherein he has the right to counsel, the right to present evidence, to call witnesses, to present expert testimony, to confront and cross-examine the witnesses against him, and to have counsel appointed if he cannot afford private counsel. If the offender rebuts the presumption by clear and convincing evidence, application of the legislatively enacted maximum penalty is avoided.

In determining that the statutorily afforded opportunity to rebut the presumption is constitutionally insufficient, the majority first concludes that the determination of whether an offender is a sexually violent predator is a separate factual question which commences following a conviction and which subjects the offender to heightened criminal punishment. On this basis, the majority determines that the issue of the constitutionality of the provisions of the Act in question is controlled by *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).

In *Specht,* the United States Supreme Court reviewed Colorado's Sex Offenders Act and determined that the Act violated due process. The Sex Offenders Act did not make the commission of a specified crime the basis for sentencing. Rather, it made one conviction the basis for commencing another

proceeding wherein the trial court determined whether the defendant, if at large, would constitute a threat of bodily harm to members of the public, or was a habitual offender and mentally ill. If the trial court so determined, the defendant could be sentenced to an indeterminate term of imprisonment ranging from one day to life. The United States Supreme Court reasoned that, because invocation of the Colorado statute caused the initiation of a new charge leading to criminal punishment, the defendant was entitled to due process, which that statute failed to provide.

I believe that *Specht* does not mandate the majority's finding that the Act is violative of due process. The crucial difference between the Act and the Colorado statute is that the Colorado statute failed to provide a defendant with notice and a full hearing before the statute was invoked. The United States Supreme Court stated in *Specht* that "due process, in other words, requires that [the defendant] be present with counsel, have an opportunity to be heard, be confronted with the witnesses against him, have the right to cross-examine and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed." *Specht*, 386 U.S. at 610, 87 S.Ct. 1209. Here, the Act affords an offender **every single** protection which the United States Supreme Court mentioned in *Specht*. Under the Act, an offender is provided notice and is entitled to be present, to have counsel, either private or court-appointed, to be heard, to confront the witnesses against him, to cross-examine, and to present his own evidence including expert testimony. The trial court is required to set forth its determination on the sentencing order for purposes of appeal. 42 Pa.C.S. § 9794(e).

The fact that the Act provides for every protection which the *Specht* Court identified as necessary to satisfy due process renders the majority's conclusion that *Specht* is controlling untenable. The United States Supreme Court struck down the Colorado statute only because it lacked the precise procedural due process safeguards which the Act in question provides to offenders.

The majority's conclusion that a convicted sex offender is entitled to the full panoply of relevant protections with respect to the determination of whether he is a sexually violent predator is equally unsupportable. The majority concludes that, because an offender is already presumed to be a sexually violent predator upon being convicted of a predicate offense, he is afforded no due process regarding this finding. However, under the Act, the presumption that an offender is a sexually violent predator arises only **after** an offender has been found guilty beyond a reasonable doubt or has entered a knowing and voluntary plea to one of the enumerated predicate offenses. Thus, the convicted offender to whom the presumption applies has forfeited certain legal rights which would be maintained by a defendant not yet convicted. Once the presumption of innocence has been overcome, the constitutional requirements relative to due process are of a lesser standard. *See Commonwealth v. Wright,* 508 Pa. 25, 39, 494 A.2d 354, 361 (1985), *aff'd. sub nom. McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)(once convicted, a defendant's right to remain free from incarceration has been extinguished, and he is subject to punishment).

While it is unquestionable that an offender subject to the Act is entitled to due process of law, due process is a flexible concept. The United States Supreme Court has stated:

> Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation to authority that due process is flexible and calls for such procedural protections as the particular situation demands.... Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

*Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

In the instant matter, a jury convicted appellee of numerous predicate offenses stemming from acts he committed against a nine-year-old boy. Thus, "unlike cases in which a fundamental

liberty interest is at stake, ... the defendant's fundamental right, i.e., freedom from confinement, has already been forfeited." *Wright,* at 41, 494 A.2d at 362. Accordingly, while appellee was entitled to due process with respect to the determination of whether he was a sexually violent predator, by providing notice and by affording him the right to counsel, the right to be present, to present evidence including expert testimony, to confront the witnesses against him and to cross-examine witnesses, the Act provided appellee with sufficient due process.

The majority further determines that the provision of the Act which places the burden upon the defendant to prove by clear and convincing evidence that he is not a sexually violent predator violates the Due Process Clause of the Fourteenth Amendment. The Due Process Clause prevents a court from giving the Commonwealth the benefit of a presumption which would have the effect of relieving the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt. *See Walton v. Arizona,* 497 U.S. 639, 650, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (plurality decision recognizing that the constitution is not violated by placing the burden upon a defendant to prove mitigating circumstances sufficiently substantial to call for leniency, so long as a state's method of allocating the burden of proof does not lessen the state's burden to prove every element of the offense charged). Under the Act, the Commonwealth has already met its burden of persuasion in securing the conviction on which the offender's status is based. Thus, the defendant's status as a sexually violent predator is not an element of the crime, but is instead a sentencing consideration.

The majority reasons that the determination of whether an offender is a sexually violent predator is a separate factual question following conviction and, therefore, the burden should be on the Commonwealth to establish that an offender is a sexually violent predator beyond a reasonable doubt. However, the Act does not create a separate criminal offense. Rather, the Act merely instructs the trial court how an offender who has committed a predicate criminal act is to be

sentenced. I agree that, insofar as the Act prescribes the sentencing options facing offenders, it does establish punishment. *See* 42 Pa.C.S. § 9799(a) & (c). However, it is the province of the legislature to determine the punishment imposable for criminal conduct. *Wright,* at 40, 494 A.2d at 361. The legislature has the right to fix the maximum penalty, and likewise, can if it sees fit, name the minimum. *Commonwealth v. Glover,* 397 Pa. 543, 544, 156 A.2d 114, 116 (1959). Here, the legislature could have acted within its authority and simply increased the maximum penalty for the predicate crimes. Instead the legislature drafted a detailed statute which affords a convicted criminal sex offender an opportunity to avoid the maximum penalty of life imprisonment.

With respect to placing the burden on the defendant to prove that he is not a sexually violent predator, the Act is not unlike other sentencing statutes which place the burden upon defendants to present factors to mitigate their sentences, a process which this Court has found to be constitutional. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 66, 454 A.2d 937, 963 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *rehearing denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983) (capital sentencing scheme which requires the accused to prove, by a preponderance of the evidence, any mitigating circumstances that might convince a jury that the sentence should nevertheless be set at life imprisonment, is not offensive to due process).

In the Act, the legislature has taken one factor that has always been relevant when sentencing, the risk that an individual poses to society, and has legislated the consequence if the trial court determines that an offender poses such a risk. In this regard, the Act is similar to the sentencing provisions which this Court upheld in *Wright.* In *Wright* this Court upheld the portion of the Mandatory Minimum Sentencing Act, 42 Pa.C.S. § 9712 ("Sentencing Act") which mandated the imposition of a five-year minimum sentence when the preponderance of the evidence demonstrated that a defendant was in visible possession of a firearm during the commission of certain felonies. The appellants in *Wright* argued that visible

possession of a firearm was an element of the crimes for which they were being sentenced and, therefore, the Commonwealth should have been required to prove the possession beyond a reasonable doubt.

In rejecting the claim that the Sentencing Act effectively made visible possession of a firearm a separate element of the underlying felonies, this Court cited *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), where the United States Supreme Court held that the reasonable doubt standard had always been dependent upon how a state defines the offense.[5] *Wright,* at 34, 494 A.2d at 358. This Court noted in *Wright* that, in enacting the Sentencing Act, the legislature specifically stated that visible possession "shall not be an element of the crime." *Id.* at 29, 494 A.2d at 356 (quoting 42 Pa.C.S. § 9712(b)). This Court further noted that the mandatory minimum sentence did not come into play until after a defendant had been convicted of an enumerated felony. "In making visible possession of a firearm a sentencing factor to be considered only after conviction of specified offenses, the legislature has in no way relieved the prosecution of its burden of proving guilt." *Id.* at 35, 494 A.2d at 359.

The United States Supreme Court affirmed this Court's holding in *Wright.* *See McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). Like this Court, the United States Supreme Court cited its decision in *Patterson v. New York* for the proposition that the state need not "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or punishment." *Id.* at 84, 106 S.Ct. 2411 (quoting *Patterson,* at 207, 97 S.Ct. 2319). In *McMillan,* the United States Supreme Court agreed with this Court that, because visible possession of a firearm was not an element of the underlying felony, but instead was a sentencing provision that came into play only

5. In *Patterson,* the United States Supreme Court held that a New York law which placed the burden on murder defendants to prove the affirmative defense of extreme emotional disturbance did not violate due process.

after the defendant had been found guilty, the Commonwealth did not have to prove visible possession beyond a reasonable doubt.

I do not find the majority's attempts to distinguish the instant matter from *Wright* and *McMillan* persuasive.[6] The majority reasons that, unlike in *Wright*, where a defendant found to be in visible possession of a firearm was required to be sentenced to a minimum of five years, a sentence encompassed within the purview of the sentencing guidelines for the crimes charged, here, an offender is subjected to heightened criminal punishment because the Act expands the maximum sentence to be imposed for the predicate crimes to life imprisonment if the offender is found to be a sexually violent predator. This argument fails simply because, as discussed *supra*, it is the province of the legislature to determine the boundaries of the punishment imposable for criminal conduct. Further, the United States Supreme Court, in dicta in *McMillan* stated that, if a finding of visible possession had, in fact, exposed defendants to greater or additional criminal punishment, this fact would have given the arguments raised by the defendants in *McMillan* "superficial" appeal. *McMillan* at 88, 106 S.Ct. 2411. The fact that the Sentencing Act in question in *Wright* and *McMillan* did not create any presumptions is of no moment because, as discussed *supra*, the presumption created by the Act is reasonable.

Finally, I disagree with the majority's conclusion that, even if this Court were to view the post-conviction proceeding set forth in the Act to be a mere sentencing provision, the Act would still not be constitutionally deficient. The majority reasons that the risk of error in the assessment of whether an offender is a sexually violent predator is great and involves a subjective determination by the trial court. The majority then compares this determination to the question present in

6. One way in which the majority attempts to distinguish *Wright* from the instant matter is by concluding that the issue of whether an offender is a sexually violent predator is a separate element of the crime. I believe that this argument fails because as discussed *supra* at pp. 598–599, the Act is a mere sentencing scheme and does not create a new offense.

*Wright/McMillan,* whether one was in visible possession of a firearm; which the majority deems an objective determination where the risk of error was slight.

In support of the proposition that placing the burden on the offender makes a Megan's Law hearing more unreliable than if the burden of persuasion rested with the Commonwealth, the majority cites the Third Circuit Court of Appeals' decision in *E.B. v. Verniero,* 119 F.3d 1077 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). In *E.B. v. Verniero,* the Third Circuit held that New Jersey's version of Megan's Law violated procedural due process by placing the burden on the defendant at a Megan's Law hearing to establish by a preponderance of the evidence that his classification was in error. I do not find *E.B. v. Verniero* persuasive due to the significant differences between Pennsylvania's and New Jersey's versions of Megan's Law.

Under the New Jersey statute, the risk of re-offense is assessed by *prosecutors.* The prosecutors utilize extensive guidelines in order to classify offenders under a three-tier system, with the first tier representing a low risk of recidivism and the third tier representing a high risk of recidivism. The extent of public notification is linked to the risk of re-offense.[7] If an offender opts to challenge his classification, he is limited to presenting the issues of whether the Registrant Risk Assessment Scale[8] has been accurately applied and whether there is something extraordinary about his particular case that takes it out of the "heartland" of cases within the scope of the tier that would have otherwise been indicated. *Id.* at 1108.[9] In

7. Under the New Jersey statute, only law enforcement officials are notified of the whereabouts of an offender who has been classified in the first tier. If an offender is classified in the second or third tier, more extensive public notification is required. *See E.B. v. Verniero* at 1082–87 (describing in detail the notification and registration requirements of the New Jersey statute).

8. The scale is a numerical scoring system designed with the assistance of mental health and law enforcement professionals to evaluate the degree of risk of the sex offender. *E.B. v. Verniero,* at 1083–84.

9. The *E.B. v. Verniero* court further noted that if an offender challenged not just the tier classification but also the reasonableness of the prosecutor's notification plan, the court must also exercise a judgment about

determining that the New Jersey statute violated procedural due process, the *E.B. v. Verniero* court seemed particularly concerned over the role that the prosecutors played in weighing such factors as the offender's physical and mental condition, whether the offender had received counseling or treatment or was under supervision, and the offender's criminal history. *See E.B. v. Verniero,* at 1107–1110.

The *E.B. v. Verniero* court determined that resolution of the issue of whether the scale had been accurately applied required fact-finding which posed more than a normal risk of error because it involved a subjective determination by the court regarding the degree and nature of the risk posed by the particular registrant. *Id.* at 1108. The court stated: "Thus, in resolving these issues, the court is necessarily required to assess future dangerousness. While the state is clearly entitled to require a court to undertake such an assessment, it is an undertaking involving substantial uncertainty." *Id.*

There is much less uncertainty surrounding a Megan's Law hearing under the Pennsylvania statute. The risk of re-offense is not assessed by prosecutors. Rather, the legislature has already determined that there is a great likelihood that one convicted of a violent sexual offense will offend again. "[I]n matters not within specialized judicial competence or completely commonplace, significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it." *United States v. Gainey,* 380 U.S. 63, 67, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965). After a person is convicted of a predicate offense, an *independent* review board conducts an assessment of the offender and issues a report to the court. The Assessment Board is comprised of psychiatrists, psychologists, and criminal justice experts, each of whom is an expert in the field of behavior and treatment of sexual offenders. 42 Pa.C.S. § 9799.3(a). The Assessment Board considers factors similar to those considered in any pre-sentence report. *See* 42 Pa.C.S. § 9794(c).

whether the scope of the proposed notification is appropriate to the risk presented by the particular registrant.

After receiving the Assessment Board's report, the court holds a full and complete hearing in order to determine whether the offender is a sexually violent predator.

Unlike the New Jersey statute, the Act links the determination of whether one is a sexually violent predator not only to registration and notification, but also to the offender's maximum sentence. Accordingly, the offender is not only entitled to, but has a significant incentive to present as much mitigation evidence as possible to the trial court, thereby reducing the risk of error in the fact-finding process. A certain degree of risk is always present in any sentencing proceeding. However, a defendant's liberty interest is no more threatened by the Act's provisions than it is by any other mandatory incarceration provision. As *Wright* makes clear, although sentencing proceedings must comport with due process, the convicted defendant need not be accorded "the entire panoply of criminal trial procedural rights." *Wright* at 36, 494 A.2d at 360 (quoting *Gardner v. Florida*, 430 U.S. 349, 358 n. 9, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)).

When evaluating the specific dictates required by the Fourteenth Amendment, this Court must consider: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and (3) the value of the government's interest, including the function involved and the burdens that an additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Here, the majority correctly notes that the state has a compelling interest in protecting its citizens by providing prompt information to potential victims concerning sexually violent predators. I further agree that a defendant has a private interest in avoiding the mandatory maximum life sentence applicable to sexually violent predators.

However, before an offender can invoke a due process claim for a violation of his liberty interests, there must be a protectable interest. As discussed *supra*, a defendant's fundamental right to be free from confinement has already been forfeited by the fact of his conviction for the predicate offense. Thus,

the government's interest in the safety and welfare of children and other potential victims far outweighs an offender's reduced liberty interest in avoiding a mere enhancement to a prescribed prison sentence. Preventing danger to the community is a legitimate regulatory goal, and the government's regulatory interest in community safety can often outweigh an individual's liberty interest. *United States v. Salerno*, 481 U.S. 739, 748, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)(holding that the Bail Reform Act of 1984 was not unconstitutional and that the Act's presumption that individuals arrested for certain serious offenses are far more likely to be responsible for dangerous acts in the community after arrest was not irrational or arbitrary). Further, an offender's reputation and personal life pales in comparison to the government's interest in the protection of the public from the high risk posed by sexually violent predators.

Thus, I see no constitutional violation in placing the burden of persuasion on the offender, since it is he who often times is the only person in possession of the information needed to rebut the presumption. Accordingly, I believe that while an offender is entitled to due process, the Act provides all the process that is due.[10] For the aforementioned reasons, I dissent.

---

**10.** In my opinion, the Act is actually a defendant *friendly* enactment. Instead of providing an offender with the opportunity to avoid a life sentence as it has done in the Act, the legislature could have merely increased the maximum penalties for the predicate offenses to life imprisonment.