# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory S. Person,                          :
                                            :
                        Petitioner          :
                                            :
            v.                              :    No. 222 M.D. 2013
                                            :
Pennsylvania State Police Megan's           :    Submitted: February 20, 2015
Law Section,                                :
                                            :
                        Respondent          :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**              **FILED:  November 3, 2015**

Before this Court in our original jurisdiction are the Preliminary Objections (POs) in the form of a demurrer of the Pennsylvania State Police Megan's Law Section (PSP) to the pro se Second Amended Petition for Review (Petition) of Gregory S. Person (Petitioner).[1]  Petitioner alleges that the Act variously known as Megan's Law IV or the Sexual Offender Registration and Notification Act

---

[1] Petitioner originally filed a Petition for Review on April 11, 2013.  On May 5, 2014, this Court sustained the PSP's POs for failure to plead facts and directed Petitioner to file the instant Petition within 30 days.  After granting Petitioner an extension, we received the instant Petition on August 11, 2014.  The Attorney General, on behalf of the PSP, filed POs on September 11, 2014 and Petitioner filed his response on December 19, 2014.

(SORNA)[2] is unconstitutional as applied to him under the Due Process, Equal Protection, Ex Post Facto, and Contract Clauses of the United States and Pennsylvania Constitutions. In its POs, the PSP avers that Petitioner failed to state a claim under both the United States and Pennsylvania Constitutions because Petitioner's claims have been soundly rejected by courts in Pennsylvania and federally; that Petitioner was not deprived of a protected interest under the Due Process Clause of the United States Constitution; and that Petitioner has not stated a claim under Article I, Section 9 of the Pennsylvania Constitution because no criminal prosecution is at issue. Because the PSP has not challenged some of Petitioner's claims in its POs or shown that all of Petitioner's claims are without merit, we sustain the POs in part and overrule the POs in part.

## I. Background

Petitioner pled guilty to involuntary deviate sexual intercourse in 1994 in the Court of Common Pleas of Lycoming County, prior to the enactment of the first Megan's Law (Megan's Law I).[3] After Megan's Law I went into effect in 1996,

---

[2] Sections 9799.10-9799.41 of the Sentencing Code, 42 Pa. C.S. §§ 9799.10-9799.41. Courts have also referred to SORNA as the Adam Walsh Act. Petitioner also raises claims that the application of Megan's Law II, the Act of May 10, 2000, P.L. 74, 42 Pa. C.S. §§ 9791-9799.9, to him violates his constitutional rights. Pursuant to Section 9799.41 of SORNA, 42 Pa. C.S. § 9799.41, Megan's Law II expired on December 20, 2012. Accordingly, we shall only address Petitioner's claims regarding SORNA.

[3] The Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), now known as Megan's Law I, was enacted on October 24, 1995 and became effective 180 days thereafter. Megan's Law II was enacted on May 10, 2000 after Megan's Law I was ruled unconstitutional in Commonwealth v. Williams, 733 A.2d 593 (Pa. 1999). Some portions of Megan's Law II were held to be unconstitutional in Commonwealth v. Gomer Williams, 832 A.2d 962 (Pa. 2003), and the General Assembly responded by enacting Megan's Law III on November 24, 2004. Megan's Law III was also struck down by our Supreme Court, this time for violating the single subject

*(Continued…)*

Petitioner's conviction required him to register with the PSP upon release from incarceration for a period of ten years. Petitioner's offense was reclassified by Megan's Law II, enacted in 2000, and Petitioner was required to register for his lifetime.

SORNA went into effect on December 20, 2012 and established a three-tier classification system for sexual offenders. Section 9799.14 of SORNA, 42 Pa. C.S. § 9799.14. An offender's tier status is determined by the offense committed and impacts the length of time an offender is required to register and the severity of punishment should an offender fail to register or provide false registration information. Section 9799.15 of SORNA, 42 Pa. C.S. § 9799.15; Section 4915.1 of the Crimes Code, 18 Pa. C.S. § 4915.1.[4] Petitioner pled guilty to involuntary deviate sexual intercourse, which is a Tier III offense under SORNA. 42 Pa. C.S. § 9799.14(d)(4). Tier III offenders are required to register for the offender's lifetime. 42 Pa. C.S. § 9799.15.

The PSP is charged with creating and maintaining the registration system, and has enacted regulations to that end. Section 9799.16 of SORNA, 42 Pa. C.S. §

rule of Article III, Section 3 of the Pennsylvania Constitution. Commonwealth v. Neiman, 84 A.3d 603, 616 (Pa. 2013). The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA, with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. § 9799.10(1).

[4] Section 4915.1(c)(1) of the Crimes Code provides that a Tier III offender, like Petitioner, who fails to register may be guilty of a second degree felony. 18 Pa. C.S. § 4915.1(c)(1).

9799.16; 37 Pa. Code §§ 56.1 – 56.4. Pursuant to Section 9799.16(b) of SORNA, a registrant must provide the following information for inclusion in the registry: name, including any aliases or monikers used on the internet; telephone numbers; social security number; address of each residence located in the Commonwealth; passport or immigration documents; the name and address of any employers; any occupational licensing numbers; date of birth; driver license number; and information on any vehicles owned or operated. 42 Pa. C.S. § 9799.16(b). Additionally, the PSP must ensure the registry includes a physical description of the registrant, including any identifying marks; the offender's criminal record; and a current photograph of the individual. 42 Pa. C.S. § 9799.16(c). This information is included in a statewide registry, which must "[b]e able to communicate with" the registries maintained by the United States Department of Justice and other jurisdictions. 42 Pa. C.S. § 9799.16(a)(2), (3).

In addition to registration requirements, SORNA mandates the release of certain information to the public. Relevant to this case, the General Assembly found that the release of information, most notably through the internet, enables "parents, minors and private entities" to "undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk" from "recidivist acts by [sexual] offenders." Section 9799.11(a)(7), (8) of SORNA, 42 Pa. C.S. § 9799.11(a)(7), (8). To this end, Section 9799.28(a) of SORNA, 42 Pa. C.S. § 9799.28(a) (hereafter, "internet notification provision"), mandates that the PSP "[d]evelop and maintain a system for making information about [those] convicted of[, *inter alia*,] a sexually violent offense" public via the internet. In addition to details of the conviction, the website shall contain the offender's name and alias,

4

birth year, address, facial photograph(s), and physical description. 42 Pa. C.S. § 9799.28(b)(1)-(7). If the offender operates a motor vehicle, the PSP must also post the license plate number and a description of a vehicle owned or operated by the offender on the website. 42 Pa. C.S. § 9799.28(b)(8). Further, the internet website must contain a feature that allows members of the public "to receive electronic notification when the individual convicted of a sexually violent offense, sexually violent predator or sexually violent delinquent child moves into or out of a geographic area chosen by the user." 42 Pa. C.S. § 9799.28(a)(1)(ii).

## II. Petitioner's Claims

Petitioner raises ten issues in his Petition and we have organized the claims into five categories. First, Petitioner alleges that the three-tier system established by SORNA and the law's internet notification provision violate his procedural due process rights under the United States and Pennsylvania Constitutions insofar as they deprived him of his rights to reputation, privacy, and the right to pursue happiness.[5] By designing a statutory scheme that does not provide him with any

---

[5] Petitioner identifies Article I, Sections 1 and 9 of the Pennsylvania Constitution as providing him with due process rights. Section 11 of Article I is also applicable in due process challenges when a petitioner is seeking a remedy in a court. See Lyness v. State Board of Medicine, 605 A.2d 1204, 1207 (Pa. 1992) (stating: "[t]he guarantee of due process of law, in Pennsylvania jurisprudence, emanates from a number of provisions of the Declaration of Rights, particularly Article I, Sections 1, 9 and 11 of the Pennsylvania Constitution"). Article I, Section 11 states:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

*(Continued…)*

5

sort of hearing, Petitioner argues that the General Assembly deprived him of the right to be heard by a court and to present mitigating factors.[6] (Petition Addendum I at 3-4.) According to Petitioner's allegations, SORNA is constitutionally infirm because it places an irrebuttable presumption upon him that he cannot be rehabilitated and "will always present a constant high risk of danger to the community at large." (Petition ¶ 1.B.) Relatedly, Petitioner asserts that he was deprived of his due process rights because the internet notification provision of SORNA mandates the disclosure of "constitutionally protected personal information to the public the world over." (Petition ¶ 1.C.)

Second, Petitioner alleges that his substantive due process rights guaranteed by the Pennsylvania Constitution were violated by SORNA in general by imposing "an unreasonable, arbitrary, and permanent infringement of [his] fundamental rights to reputation . . . privacy[,] and his right to pursue his own happiness." (Petition ¶ 1.A.) Further, Petitioner alleges that his rights to privacy and reputation guaranteed by the substantive due process clauses of both the United States and Pennsylvania Constitutions were violated by SORNA's internet notification provision. (Petition ¶ 1.C.)

---

Pa. Const. art. I, § 11.

[6] Relatedly, Petitioner argues that his procedural due process rights were violated when the PSP classified him as a Tier III offender because the PSP has no authority to classify Petitioner and, thus, impermissibly acted in a judicial role. (Petition ¶ 1.E.) It appears that Petitioner has misread the statute; the General Assembly, not the PSP, determined that Petitioner's offense was a Tier III offense. See 42 Pa. C.S. § 9799.14 (listing the offenses that fall under each tier). Because the statute provides the PSP with no discretion in classifying Petitioner, it did not act in a judicial capacity and Petitioner has not stated a viable claim.

6

Third, Petitioner alleges that his right to equal protection under the United States and Pennsylvania Constitutions was violated by SORNA's tier classification system, in general, and by being treated differently than others in three ways. Initially, Petitioner argues that he was deprived of equal protection of the laws because those who were incarcerated at the time Megan's Law I was enacted are required to register as a sexual offender, and those who were convicted of the same crime as Petitioner, but were released from incarceration and not under the supervision or control of the Board of Probation and Parole (Parole Board) prior to enactment, are not. (Petition ¶ 1.G.) Further, Petitioner alleges an equal protection violation on the basis of his inability under SORNA to challenge the internet notification provision. (Petition ¶ 1.D.) According to his allegations, Petitioner is subject to an arbitrary classification by not being able to challenge the internet notification requirements of SORNA when those who were juveniles at the time of their conviction may do so. (Petition ¶ 1.D.) Finally, Petitioner argues that he is impermissibly treated differently than those convicted after the enactment of Megan's Law I because those offenders have the right to challenge their classification with the assistance of court-appointed counsel in post-trial proceedings. (Petition ¶ 1.F.)

Fourth, Petitioner alleges that various requirements of SORNA violate the Ex Post Facto Clauses of the United States and Pennsylvania Constitutions. Petitioner alleges that the provisions of SORNA are more restrictive than previous versions and removed "liberty interest[s] created under previous versions of" the law. (Petition ¶ 2.A.) Petitioner specifically points to the registration requirements of SORNA, which he argues are more restrictive than previous versions of

7

Megan's Law, and the removal of a right bestowed upon him by Section 9795.5 of Megan's Law III, 42 Pa. C.S. § 9795.5 (expired December 20, 2012, pursuant to Section 9799.41 of SORNA, 42 Pa. C.S. § 9799.41). Under that expired provision, an offender subject to lifetime registration may, provided certain requirements are met, petition the sentencing court to be exempt from the Megan's Law III provision requiring information to be posted on the internet. 42 Pa. C.S. § 9795.5.

Fifth, and finally, Petitioner raises two claims with regard to his 1994 negotiated plea agreement. Petitioner notes that he entered a guilty plea that limited the penalties imposed upon him two years before Megan's Law I went into effect. By imposing additional penalties, Petitioner avers SORNA impairs the obligations outlined in his 1994 plea agreement in violation of Article I, Section 17 of the Pennsylvania Constitution and Article I, Section 10 of the United States Constitution. (Petition ¶ 2.B.) Petitioner further contends that SORNA deprives him of his liberty and violates his due process rights by imposing penalties beyond the terms of his negotiated plea agreement. (Petition ¶ 1.H.)

## III. The PSP's POs

The PSP objects to Petitioner's allegations in three POs in the nature of a demurrer.[7] First, the PSP avers that Petitioner's due process, equal protection, and

_____

[7] When assessing the legal sufficiency of a petition for review, "the Court must accept as true all well-pleaded allegations of material fact as well as all reasonable inferences deducible therefrom." Rodgers v. Pennsylvania Department of Corrections, 659 A.2d 63, 65 (Pa. Cmwlth. 1995). A petitioner is under no burden to prove his cause of action at this preliminary stage. Surgical Laser Technologies, Inc. v. Department of Revenue, 626 A.2d 664, 671 (Pa. Cmwlth. 1993). A demurrer must only be sustained "where it appears, with certainty, that the law permits no recovery under the allegations pleaded." Rodgers, 659 A.2d at 65.

ex post facto claims have been found to be without merit. The PSP's allegation reads as follows:

> In its Memorandum Opinion in Haigh v. Commissioner of Pennsylvania State Police, 2010 WL 9519049, No. 518 M.D. 2010 (Pa. Cmwlth. Dec. 30, 2010), this Court found that sex offender registration requirements do not violate the Due Process, Equal Protection, and Ex Post Facto [C]lauses of the Pennsylvania and United States Constitutions.

(POs ¶ 11.)[8]

Second, the PSP objects to Petitioner's due process claims under the United States Constitution because Petitioner only alleges that his rights to reputation, privacy, and the pursuit of happiness were deprived, and these rights are not protected under the Fourteenth Amendment to the United States Constitution. Third, the PSP objects to Petitioner's claims under Article I, Section 9 of the Pennsylvania Constitution, which provides due process protections in the context of criminal prosecutions, because no criminal prosecution is at issue in this case.

We now address each of Petitioner's claims and the PSP's objections thereto below.

---

[8] Haigh is an unreported panel decision of this Court and, pursuant to Section 414(a) of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

## IV. Discussion

### 1. Due Process Under the Fourteenth Amendment to the United States Constitution

We first address the PSP's demurrer to Petitioner's due process claims under the United States Constitution. The PSP's POs assert that Petitioner did not state a claim that his rights were violated under the Due Process Clause of the United States Constitution because Petitioner only alleged that he was deprived of his rights to reputation, privacy, and the pursuit of happiness. According to PSP's PO, "[b]ecause the Due Process Clause of the United States Constitution does not protect individuals' rights of reputation, privacy, and the pursuit of happiness, Petitioner can assert no facts which would allow recovery under the law." (POs ¶ 17.) Petitioner argues in response that, although reputational interests alone are not sufficient to invoke due process protection under the United States Constitution, the internet publication of his private information, coupled with other onerous provisions of SORNA, constitutes a significant imposition beyond the mere tarnishment of his reputation and establishes liberty interests that are protected under the Due Process Clause.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution applies only when "the state seeks to deprive a person of a life, liberty or property interest," Pennsylvania Game Commission v. Marich, 666 A.2d 253, 255 (Pa. 1995). However, liberty, as used in the Fourteenth Amendment, is a broad concept. See Meyer v. Nebraska, 262 U.S. 390, 399 (1923) ("Without doubt, [liberty interests] denotes not merely freedom from bodily restraint but also the right of the individual . . . generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.").

10

Although the Pennsylvania Supreme Court has advised us that "there can be no doubt that the United States Constitution guarantees a right to privacy," we find no precedent that there is a fundamental privacy right to have one's criminal history and picture shielded from public view. In re June 1979 Allegheny County Investigating Grand Jury, 415 A.2d 73, 77 (Pa. 1980) (rejecting a claim that a record of an arrest is protected by the right to privacy). We, therefore, agree that Petitioner has not stated a claim for violation of his right to privacy under the United States Constitution.

Petitioner also asserts that his right to reputation under the United States Constitution is infringed by SORNA's internet notification provision. While reputational interests alone are insufficient to invoke federal due process guarantees, federal courts have held that a plaintiff may "make out a due process claim for deprivation of a liberty interest in reputation [by] show[ing] a stigma to his reputation *plus* deprivation of some additional right or interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis in original) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)). Under the so-called "stigma-plus" test, a petitioner "must show[:] (1) some utterance of a statement that is sufficiently derogatory to injure his or her reputation, which is capable of being proved false, and (2) some material and state-imposed burden or alteration of his or her status or of a right." D.C. v. School District of Philadelphia, 879 A.2d 408, 416 (Pa. Cmwlth. 2005).

The federal circuit courts appear to be split on whether state Megan's Laws satisfy the "stigma-plus" test and the United States Supreme Court has yet to

11

address this issue. See Doe v. Department of Public Safety ex rel. Lee, 271 F.3d 38, 57-59 (2d Cir. 2001) (Connecticut I) (holding that by mandating that a sex offender registry be published on the internet, Connecticut's Megan's Law imposes restrictions that implicate the plaintiff's liberty interests under the "stigma-plus" test), rev'd on other grounds by Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 7-8 (2003) (Connecticut II) ("find[ing] it unnecessary to reach" the question of whether a sexual offender was deprived of an interest protected by the Fourteenth Amendment); Schepers v. Indiana Department of Correction, 691 F.3d 909, 914 (7th Cir. 2012) (holding that by depriving sexual offenders of rights held by ordinary citizens of Indiana, Indiana's Megan's Law imposes restrictions that fit the requirements of the "stigma-plus" test); but see Dean v. McWherter, 70 F.3d 43, 45 (6th Cir. 1995) (holding that a provision of a Tennessee law that labeled convicted sexual offenders as "a species of mentally ill persons," "does not, without more, impute a liberty interest sufficient to trigger due process protections") (internal quotation marks omitted). Notwithstanding this uncertainty, we hold that, under the facts alleged, Petitioner cannot meet the "stigma-plus" test because the allegedly derogatory statements posted on the internet to which Petitioner is objecting are incapable of being proven false. The allegedly derogatory statements are nothing more than statements that Petitioner has pled guilty to a sexually violent offense and is currently registered with the PSP, facts Petitioner acknowledges to be true.

Accordingly, Petitioner has not stated a due process claim under the Fourteenth Amendment to the United States Constitution, and we sustain the PSP's PO demurring to that claim.

**2. Due Process Under Article I, Sections 1 and 11 of the Pennsylvania Constitution**

Article I, Section 1 of the Pennsylvania Constitution states that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1. Further, Article I, Section 11 of the Pennsylvania Constitution provides that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Pa. Const. art. I, § 11. Unlike the Due Process Clause of the Fourteenth Amendment, our Supreme Court has acknowledged that reputation and privacy are protected under the above provisions of the Pennsylvania Constitution. See R. v. Department of Public Welfare, 636 A.2d 142, 149 (Pa. 1994) (discerning a fundamental right to reputation under the Pennsylvania Constitution); In re June 1979 Allegheny County Investigating Grand Jury, 415 A.2d at 77 (stating that the right to privacy as protected by Article I, Section 1 encompasses the freedom from disclosure of personal matters and the freedom to make certain important decisions). Accordingly, reputation and privacy are among the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process. R., 636 A.2d at 149.

Petitioner alleges that: (1) his procedural due process rights are infringed by SORNA's registration requirements because the statute creates an irrebuttable presumption that Petitioner will always be a high risk of danger to the community and he is subject to SORNA's internet notification provision without providing

13

him an opportunity to challenge his level of dangerousness; and (2) his substantive due process rights are violated by SORNA in general because it imposes "an unreasonable, arbitrary, and permanent infringement of [his] fundamental rights to reputation, . . . privacy[,] and [his] right to pursue his own happiness," and, specifically, by SORNA's internet notification provision. (Petition ¶¶ 1.A, 1.C.)

The PSP demurs to these claims, asserting that they do not have merit under existing precedent. By citing to Haigh, the PSP relies on our decision in Doe v. Miller, 886 A.2d 310 (Pa. Cmwlth. 2005), for the proposition that Megan's Law II did not raise due process concerns. Haigh, slip op. at 3. In Miller we addressed a pro se class's allegations that the registration and notification requirements of Megan's Law II violated its rights to due process and equal protection under the Pennsylvania and United States Constitutions. Miller, 886 A.2d at 313. The PSP filed preliminary objections in the nature of a demurer, which we sustained. Id. at 314, 317. However, we did not hold in Miller that a petitioner could not assert a due process claim with regard to Megan's Law II. Id. at 314. Instead, we simply concluded that because the class failed to adequately allege "which property right or other protected interest" was infringed by Megan's Law II, the class failed to state a substantive due process claim. Id.[9] Because Miller addressed Megan's Law

_____

[9] In Miller we also held that, because a substantive due process claim involves the same analysis as an equal protection claim, the class's substantive due process claim failed by virtue of its failure to state an equal protection claim. Miller, 886 A.2d at 314. While it is true that we conduct the same analysis for substantive due process as we do for equal protection, Griffin v. Southeastern Pennsylvania Transportation Authority, 757 A.2d 448, 452 (Pa. Cmwlth. 2000), this is only the case when the standard of review for each claim coincides, i.e., a petitioner is not a member of a protected class and is asserting that a non-fundamental right was deprived. Here, Petitioner is not a member of a suspect class, but is alleging that his fundamental right to reputation is implicated by SORNA. As such, we analyze Petitioner's due process claim under

*(Continued…)*

14

II, which contained very different notification requirements than SORNA,[10] and did not directly address the merits of the petitioners' due process claim, that case is not dispositive and the PSP has not sufficiently objected to Petitioner's substantive due process claim for us to dismiss that claim.

Petitioner specifically alleges that SORNA's registration and internet notification provision are based on an impermissible irrebuttable presumption. Our Supreme Court recently assessed the constitutionality of the irrebuttable presumption as applied to juveniles in In re J.B., 107 A.3d 1 (Pa. 2014).[11] According to Section 9799.11(a)(4) of SORNA, "[s]exual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount government interest." 42 Pa. C.S. § 9799.11(a)(4). The presumption that sexual offenders pose a high risk of reoffense is a cornerstone of SORNA's statutory scheme, and under that scheme individual sexual offenders are not provided an opportunity to rebut this presumption. See Section 9799.23(b) of SORNA, 42 Pa. C.S. § 9799.23(b) (stating that courts shall not have the authority, with certain exceptions, to relieve a sexual offender from

strict scrutiny and analyze his equal protection claim under a rational basis standard. See Miller, 886 A.2d at 315 (stating that "legislation creating different categories among criminal offenders[] receives rational basis review; however, legislation based on suspect classifications, such as race, national origin, or alienage, as well as classifications that affect fundamental rights are examined under strict scrutiny").

[10] We did not address whether the petitioners' fundamental right to reputation was infringed by Megan's Law II in Miller. Crucially, Miller addressed Megan's Law II, which did not include a *public* notification provision.

[11] Because J.B. was issued on December 29, 2014, the parties, here, did not have the benefit of J.B. at the time of their filings.

the duty to register.) Thus, under SORNA, individuals convicted of sexually violent offenses are required to register without there ever being a determination regarding their level of dangerousness.

In J.B., the Supreme Court concluded that SORNA's irrebuttable presumption that juvenile sexual offenders always pose a high risk of reoffense encroached upon the juvenile petitioners' constitutionally protected interest in their reputation without due process of law. J.B., 107 A.3d at 14. The Supreme Court began its analysis in J.B. by considering whether the juvenile petitioners had a right protected by the due process clause of the Pennsylvania Constitution. According to the Supreme Court:

> SORNA explicitly declares that sexual offenders, including juvenile offenders, "pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa. C.S. § 9799.11(a)(4). Indeed, a primary purpose of SORNA is to inform and warn law enforcement and the public of the potential danger of those registered as sexual offenders. . . . [T]he common view of registered sexual offenders is that they are particularly dangerous and more likely to reoffend than other criminals. . . . Thus, SORNA registration requirements, premised upon the presumption that all sexual offenders pose a high risk of recidivating, impinge upon juvenile offenders' fundamental right to reputation as protected under the Pennsylvania Constitution.

Id. at 16-17 (citations omitted).

After determining that the juvenile petitioners had a protected right to their reputations, the Supreme Court summarized its case law outlining the so-called "irrebuttable presumption doctrine" as providing that "'irrebuttable presumptions are violative of due process where the presumption is deemed not universally true

16

and a reasonable alternative means of ascertaining that presumed fact are available.'" Id. at 15 (quoting Department of Transportation, Bureau of Driver Licensing v. Clayton, 684 A.2d 1060, 1063 (Pa. 1996)). The Supreme Court cited studies credited by the trial court that showed juvenile sexual offenders exhibit levels of recidivism that "are indistinguishable from the recidivism rates of non-sexual juvenile offenders." Id. at 17. Based on these studies and other societal knowledge gleaned from statutes and case law, the Supreme Court concluded "that SORNA's registration requirements improperly brand all juvenile offenders' reputations with an indelible mark of a dangerous recidivist, even though the irrebuttable presumption linking adjudication of specified offenses with a high likelihood of recidivating is not 'universally true.'" Id. at 19 (quoting Clayton, 684 A.2d at 1063). The Supreme Court then determined that a reasonable alternative means to ascertain whether the juvenile offenders represented a recidivism risk was available in the form of a hearing similar to the hearing required before classifying an offender as a sexually violent predator pursuant to Section 9799.24 of SORNA, 42 Pa. C.S. § 9799.24. Id. Concluding that the "irrebuttable presumption doctrine" was satisfied, the Supreme Court held that the lifetime registration requirement was unconstitutional as applied to juveniles. Id. at 19-20.

Although the Supreme Court's holding in J.B. is limited to juvenile offenders, that decision provides us with the analytical framework with which to consider whether Petitioner has stated a claim challenging, on procedural due process grounds, SORNA's irrebuttable presumption.

Under J.B., we first determine whether Petitioner has asserted a reputational interest protected by due process. The Supreme Court recognized a constitutionally-protected reputational interest for the juvenile sexual offenders in J.B., and has also recognized a reputational interest for adults adjudged to be sexually violent predators implicated by the sex offender notification provisions of earlier versions of Megan's Law. See Commonwealth v. Maldonado, 838 A.2d 710, 714 (Pa. 2003) (quoting Brummer v. Iowa Department of Corrections, 661 N.W.2d 167, 174-75 (Iowa 2003)) (holding that "there is little doubt" the notification requirements applicable under Megan's Law II to adult sexually violent predators "constitutes a significant imposition beyond the mere tarnishing of one's reputation, as it 'threatens the impairment and foreclosure of the associational or employment opportunities of persons who may not truly pose the risk to the public that an errant risk assessment would indicate'"); Commonwealth v. Williams, 733 A.2d 593, 607 (Pa. 1999) (determining that "[o]ne's livelihood, domestic tranquility and personal relationships are unquestionably put in jeopardy by the notification provisions" applicable to adult sexually violent predators).[12]

---

[12] Both Maldonado and Williams assessed the requirements placed upon sexually violent predators in the earlier versions of Megan's Law. Under those versions of the law,

> the name, address, offense, designation and photograph of sexually violent predators . . . . [was] given to the neighbors of sexually violent predators, the director of county child and youth services where the sexually violent predator resides, the superintendent of each school district in the area, including private and parochial schools, the director of licensed day care facilities in the municipality where the sexually violent predator resides and the president of any college, university and community college located within 1,000 feet of a sexually violent predator's residence.

Williams, 733 A.2d at 596. Because those classified as sexually violent predators under Megan's Law II were determined to suffer from "a mental abnormality or personality disorder,"

*(Continued…)*

18

While the extent of the deprivation may impact the amount of due process afforded to sexually violent offenders, see Marich, 666 A.2d at 256 n.7 (holding that, pursuant to Mathews v. Eldridge, 424 U.S. 319, 336 (1976), the amount of process due is determined by balancing the private interest affect against the risk of erroneous deprivation of such interest and the Government's interest), we cannot say with certainty that Petitioner will be unable to prove that SORNA deprives Tier III adult sexual offenders of their constitutionally protected reputational interest.

Next, under J.B., we assess whether we can say with certainty that Petitioner will be unable to satisfy the two requirements of the irrebuttable presumption doctrine: (1) that it is not "universally true" that adult offenders pose a heightened risk of recidivism; and (2) that a reasonable alternative process to ascertain the presumed fact is available. J.B., 107 A.3d at 14-15. When ruling on preliminary objections we must accept all facts alleged, and the inferences reasonably deduced therefrom, as true. Bright v. Pennsylvania Board of Probation and Parole, 831 A.2d 775, 777 (Pa. Cmwlth. 2003). Moreover, we must resolve any doubt "in favor of overruling the demurrer." Surgical Laser Technologies, Inc. v. Department of Revenue, 626 A.2d 664, 668 (Pa. Cmwlth. 1993). The question before the Supreme Court in J.B. was whether it is universally true that *juvenile* offenders pose a high risk of recidivism and, in deciding that it was not true, the Supreme Court discussed the evidence presented to the trial court. While describing the evidence of recidivism of juvenile sex-offenders found credible by

---

42 Pa. C.S. § 9792 (expired December 20, 2012, pursuant to Section 9799.41 of SORNA, 42 Pa. C.S. § 9799.41), being labeled as such carries a stigma beyond being labeled a sexually violent offender under SORNA. See Schepers, 691 F.3d at 914 ("Society's abhorrence of sexually violent predators goes above and beyond that reserved for other sex offenders.").

the trial court, the Supreme Court noted that "adult sexual offenders have a high likelihood of reoffense." J.B., 107 A.3d at 17. However, the question of whether it is universally true that all *adult* sexual offenders pose a high risk of reoffense was not at issue in J.B. and the Supreme Court did not decide that question. Thus, such general references are dicta and should not preclude an adult sexual offender the opportunity to present evidence in an effort to prove that the presumption is not universally true. Should the Petitioner meet the first requirement, the next question would be whether a reasonable alternative process to ascertain the presumed fact is available, such as an individualized hearing to determine whether Petitioner is currently dangerous.[13]

Because we cannot say for certain that Petitioner has not stated a claim, and because the PSP did not provide support for its objections to Petitioner's procedural and substantive due process claims, we overrule the PSP's demurrer to Petitioner's due process claims under Article I, Sections 1 and 11 of the Pennsylvania Constitution.[14]

---

[13] Petitioner also alleges that, under the principles of procedural due process, he is entitled to a hearing to determine whether he is currently dangerous prior to being subject to the internet notification provision of SORNA. The United States Supreme Court has held that a hearing is not required by the Due Process Clause of the United States Constitution. See Connecticut II, 538 U.S. at 7 (holding that sexual offenders asserting procedural due process challenge to their status under state sex offenders registries must show that the fact they are challenging is relevant to the state statutory scheme). However, should Petitioner prove his claim that SORNA's irrebuttable presumption that all adult offenders pose a heightened recidivism risk is not universally true, Petitioner may be entitled to a hearing to determine whether he should remain registered as a sexually violent offender.

[14] We note that Petitioner faces a high burden of proof to prove his allegations; SORNA, like all duly enacted acts passed by the General Assembly, enjoys a strong presumption of constitutionality and "'a statute will not be declared unconstitutional unless it clearly, palpably,

*(Continued…)*

### 3. Procedural Due Process Under Article I, Section 9 of the Pennsylvania Constitution

Petitioner also alleges that SORNA deprives him of his due process rights under Article I, Section 9 of the Pennsylvania Constitution. The PSP avers that Petitioner has not stated a claim under this constitutional provision because no criminal prosecution is at issue.

> Article I, Section 9 of our Constitution provides:
>
> In all *criminal prosecutions* the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

Pa. Const. art. I, § 9 (emphasis added). Petitioner raises no claims that implicate a criminal prosecution; Petitioner's claims all address administrative action taken by the PSP well after Petitioner pled guilty to his crime and was sentenced. Accordingly, the PSP's PO to this claim is sustained.

---

and plainly violates the Constitution.'" Pennsylvania State Association of Jury Commissioners v. Commonwealth, 64 A.3d 611, 618 (Pa. 2013) (quoting Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth, 877 A.2d 383, 393 (Pa. 2005)).

### 4. Equal Protection

Petitioner alleges multiple violations of his right to equal protection under both the United States and Pennsylvania Constitutions. Petitioner alleges that the entire tier classification system of SORNA violates his equal protection rights. Petitioner asserts that he was impermissibly treated differently than others similarly situated in three ways: (1) that he is required to register and those convicted of the same crime, but released from prison or supervision of the Parole Board prior to the enactment of Megan's Law I, are not; (2) that unlike juvenile offenders, he may not petition a court to have his notification requirements removed; and (3) that he was not provided counsel to challenge and appeal the SORNA registration requirements when those convicted after the enactment of Megan's Law I have such rights. Once again, the PSP demurs to these claims, arguing that they are without merit based on our decision in Miller.

Equal protection is the constitutional principle that "'like persons in like circumstances will be treated similarly'" under the law. Miller, 886 A.2d at 315 (quoting Curtis v. Kline, 666 A.2d 265, 267 (Pa. 1995)). Article I, Sections 1 and 26 of the Pennsylvania Constitution provide the basis for equal protection under state law. Pa. Const. art. I, § 1 ("All men are born equally free and independent, and have certain inherent and indefeasible rights."); Pa. Const. art. I, § 26 (stating that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right").[15]

---

[15] We analyze the equal protection provisions of the Pennsylvania Constitution "under the same standards used by the United States Supreme Court when reviewing equal protection

*(Continued…)*

In Miller, we were confronted with class action claims that the classification scheme of Megan's Law II violated the Equal Protection Clauses of the United States and Pennsylvania Constitutions because the General Assembly's decision to classify those convicted of crimes as sexual and non-sexual offenders "def[ied] reason and common sense." Miller, 886 A.2d at 313. In assessing the equal protection claim, we reasoned that "'[t]he prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation.'" Id. at 315 (quoting Curtis, 666 A.2d at 268 (citations omitted)). Determining whether a classification is arbitrary depends on the type of classification at issue.

> The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

Id. (quoting Curtis, 666 A.2d at 268 (citation omitted)). Because "convicted sexual offenders as a category of felons[] is not . . . a suspect class," we reviewed, in Miller, Megan's Law II's registration requirements under a rational basis standard and concluded that the classification scheme met equal protection standards

---

claims under the Fourteenth Amendment to the United States Constitution." Love v. Borough of Stroudsburg, 597 A.2d 1137, 1139 (Pa. 1991).

because it sought to promote the legitimate state interest of promoting public safety and welfare. Id. at 316.

Based on our holding in Miller, we are bound to conclude that Petitioner has not stated a claim that SORNA's three-tier classification system violates the Equal Protection Clauses of the United States and Pennsylvania Constitutions. Further, Petitioner's claim that his equal protection rights were violated by being treated differently than those convicted of the same crime as Petitioner, but released from incarceration and not under Parole Board supervision at the time Megan's Law I was enacted, is similarly without merit. Convicted sexual offenders are not a suspect class, id., and the General Assembly's decision to exempt those who were released from incarceration and not under the supervision or control of the Parole Board prior to the enactment of Megan's Law I is rationally related to promoting public safety and welfare. See Curtis, 666 A.2d at 268 (noting that when conducting a rational basis analysis, "the reviewing court is free to hypothesize reasons the legislature might have had for the classification"). Locating a convicted sexual offender subject to registration and notification requirements, but not currently under supervision, and enforcing such requirements would place an enormous burden on the state. Establishing reasonable enforcement mechanisms are essential to achieving the stated goal of promoting public safety and welfare, and the General Assembly had a rational basis to exempt those released from prison and not on parole from the registration requirements. Accordingly, we sustain the PSP's demurrer to this claim.

24

Similarly, we conclude that Petitioner's allegation that SORNA impermissibly treats him differently than juveniles, insofar as the law provides a mechanism by which only juveniles may have their registration requirement terminated, also is without merit.[16] Courts have long distinguished between juveniles and adults in various areas of law. See Bellotti v. Baird, 443 U.S. 622, 635 (1979) ("although children generally are protected by the same constitutional guarantees against governmental deprivations as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs"). Recently, our Supreme Court, in J.B., noted research indicating that "many of those who commit sexual offenses as juveniles do so as a result of impulsivity and sexual curiosity, which diminish with rehabilitation and general maturation" and that "the vast majority of juvenile offenders are unlikely to recidivate." J.B., 107 A.3d at 17. Because those who commit sexually violent offenses as children are less likely to recidivate, the General Assembly's decision to provide a means for juveniles to have their registration requirement terminated is rationally related to promoting public safety and welfare and does not offend Petitioner's equal protection rights. Therefore, we will sustain the PSP's challenge to this claim.

---

[16] Section 9799.23(b) of SORNA provides that "the court shall have no authority to relieve a sexual offender from the duty to register" except as provided in Section 9799.17. 42 Pa. C.S. § 9799.23(b). Under Section 9799.17(a) of SORNA, juvenile offenders "shall have the registration requirement terminated if": (1) "at least twenty-five years have elapsed since the individual was []adjudicated delinquent for an offense, which if committed by an adult, would be classified" as rape, involuntary deviate sexual intercourse, aggravated indecent assault, or "attempt, solicitation or conspiracy to commit" the above offenses; (2) for twenty-five "years prior to filing the petition, the individual has not been convicted of a subsequent sexually violent offense or a subsequent offense" graded as a second degree misdemeanor or higher or an offense "punishable by a term of imprisonment greater than one year"; (3) "[t]he individual successfully completed court-ordered supervision without revocation"; and (4) the individual completed an approved treatment program for sexual offenders. 42 Pa. C.S. § 9799.17(a).

Finally, Petitioner alleges that his equal protection rights were violated by being afforded less due process than those convicted after the effective date of Megan's Law I because those convicted after the effective date are afforded the opportunity to challenge or appeal their sexual offender classification with the assistance of counsel. Petitioner's averment is premised on the erroneous belief that those convicted of sexually violent offenses after the enactment of Megan's Law I are capable of challenging their tier classification at a criminal proceeding with the assistance of counsel. The registration requirements of SORNA are civil in nature. Commonwealth v. Leidig, 956 A.2d 399, 404 (Pa. 2008). The imposition of civil registration requirements are not components of a criminal proceeding for which the right to the assistance of counsel attaches. See Commonwealth v. Cox, 983 A.2d 666, 680 (Pa. 2009) (stating that the Sixth Amendment guarantees the right to counsel at all critical stages of a *criminal proceeding*). As discussed above, even if Petitioner was convicted after the enactment of Megan's Law I, sentencing courts lack the authority to relieve an adult sexual offender from the duty to register. 42 Pa. C.S. § 9799.23(b)(2). The sole circumstance where a sexual offender is given the right to counsel to challenge and appeal a sex offender classification is when the offender is designated as a sexually violent predator under Section 9799.24(e) of SORNA. See 42 Pa. C.S. § 9799.24(e)(2) (providing the right to court-appointed counsel at a hearing to determine whether the individual is a sexually violent predator). Petitioner was not designated to be a sexually violent predator; thus, even if he had been convicted after the enactment of Megan's Law I, he would not have been entitled to challenge his designation with the assistance of counsel.

In sum, we conclude that Petitioner has not stated a claim establishing that the SORNA provisions requiring him to register as a Tier III sexual offender violate his right to equal protection under either the United States or Pennsylvania Constitutions, and we sustain the PSP's demurrers with regard to all of Petitioner's equal protection claims.

**5. Ex Post Facto**

Next, Petitioner alleges that SORNA is an ex post facto law under both the United States and Pennsylvania Constitutions because SORNA increases registration requirements and removes liberty interests given to him by prior versions of Megan's Law. The PSP alleges Petitioner's claims were found to be without merit by the Pennsylvania Supreme Court in <u>Commonwealth v. Gaffney</u>, 733 A.2d 616, 621 (Pa. 1999), and the United States Supreme Court in <u>Smith v. Doe</u>, 538 U.S. 84 (2003).

Both the United States and Pennsylvania Constitutions prohibit ex post facto laws. U.S. Const. Art. I, § 10 (stating "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."); Pa. Const. art. I, § 17 (stating that "[n]o ex post facto law, nor any law impairing the obligations of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed"). A law violates the Ex Post Facto Clauses of both the United States and Pennsylvania Constitutions if the law

> (1) makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; (2) aggravates a crime, or makes it greater than it was when committed; (3) changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed; or (4) alters the legal rules

27

of evidence, and receives less, or different, testimony than the law required at the time of the commission of the offense in order to convict the offender.

Commonwealth v. Allshouse, 36 A.3d 163, 184 (Pa. 2012).

With regard to whether the specific *registration requirements* of SORNA pose ex post facto concerns, we recently conducted an extensive review of SORNA's registration requirements in Coppolino v. Noonan, 102 A.3d 1254 (Pa. Cmwlth. 2014) (en banc)[17] and held that the registration requirements, save Section 9799.15(g), 42 Pa. C.S. § 9799.15(g) (requiring those convicted prior to SORNA to provide in-person updates to registration information), are not punitive and pose no ex post facto concerns. Coppolino, 102 A.3d at 1278-79. Based on our holding in Coppolino, the only registration requirement of SORNA that is punitive, as applied to Petitioner, is Section 9799.15(g) and that requirement must not be imposed upon him. Accordingly, the PSP's PO to Petitioner's ex post facto challenge to SORNA's registration requirements is sustained in accordance with Coppolino.

Our decision in Coppolino did not address whether SORNA's *internet notification provision* constitutes an ex post facto law because the petitioner in Coppolino was convicted under Megan's Law III, which, like SORNA, contained

---

[17] Coppolino, which was heard in our original jurisdiction, is currently on appeal to the Pennsylvania Supreme Court. The Supreme Court held oral argument on whether SORNA is unconstitutionally overbroad with respect to Coppolino's right of free speech and will decide, on the briefs, whether application of SORNA to Coppolino would be an unconstitutional ex post facto application. Coppolino v. Noonan (No. 132 MAP 2014, filed July 20, 2015). At the time the PSP filed its POs, September 11, 2014, Coppolino was not yet filed by this Court. We note, however, that the PSP cited to Coppolino as additional authority in its reply brief to Petitioner's brief in opposition to the PSP's POs.

28

an internet notification provision. Petitioner challenges the imposition of the internet notification requirement on him as an unconstitutional ex post facto law under both the United States Constitution and the Pennsylvania Constitution. The United States Supreme Court has assessed whether the internet notification provision of Alaska's Megan's Law was an ex post facto law under the federal constitution in <u>Smith</u>. The Court held that the internet publication of accurate information is not punitive and, therefore, posed no ex post facto concern under the United States Constitution. <u>Smith</u>, 538 U.S. at 98. According to the Court:

> [T]he stigma of Alaska's Megan Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of *truthful information in furtherance of a legitimate governmental objective as punishment*. . . The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

<u>Id.</u> at 98-99 (emphasis added).

The internet notification provision of Alaska's Megan's Law essentially mirrors SORNA's internet notification provision applicable to Petitioner.[18] We,

---

[18] Under Alaska's Megan's Law:

*(Continued…)*

thus, conclude that the internet notification provision of SORNA does not constitute an ex post facto law under the United States Constitution when applied to Petitioner, and we sustain the PSP's PO in this regard.

However, "discharging the federal constitutional claim does not automatically terminate our inquiry." Gaffney, 733 A.2d at 621. Our Supreme Court has long held that, when called upon to interpret provisions of the Pennsylvania Constitution, we are not bound by the interpretations of similar provisions of the United States Constitution made by the United States Supreme Court. Commonwealth v. Edmunds, 586 A.2d 887, 894 (Pa. 1991). "Although we may accord weight to federal decisions" when they address underlying specific constitutional guarantees, "it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution, each time a provision of that fundamental document is implicated." Id. at 894-95. When there is compelling reason to do so, we may interpret our constitution as affording greater protections than the federal constitution. Gaffney, 733 A.2d at 621.

---

Information about a sex offender or child kidnapper that is contained in the central registry, including sets of fingerprints, is confidential and not subject to public disclosure except as to the sex offender's or child kidnapper's name, aliases, address, photograph, physical description, description of motor vehicles, license numbers of motor vehicles, and vehicle identification numbers of motor vehicles, place of employment, date of birth, crime for which convicted, date of conviction, place and court of conviction, length and conditions of sentence, and a statement as to whether the offender or kidnapper is in compliance with requirements of AS 12.63 or cannot be located.

Alaska Stat. § 18.65.087(b). Although "[t]he Act does not specify the means by which the registry information must be made public[,] Alaska has chosen to make most of the nonconfidential information available on the Internet." Smith, 538 U.S. at 91.

We have not found a Pennsylvania case binding upon this Court addressing whether SORNA's internet notification provision is punitive for purposes of the Ex Post Facto Clause of the Pennsylvania Constitution,[19] and the PSP's POs does not

[19] In Commonwealth v. Ackley, 58 A.3d 1284, 1287 (Pa. Super. 2012), the Superior Court held that the internet notification provision of Megan's Law III, 42 Pa. C.S. § 9798.1 (expired December 20, 2012, pursuant to 42 Pa. C.S. § 9799.41), was not punitive for purposes of the Ex Post Facto Clause of the Pennsylvania Constitution. Even if Ackley was on point we are "not bound by the Superior Court's precedents, although where persuasive, we are free to adopt the Superior Court's reasoning." Wertz v. Chapman Township, 709 A.2d 428, 433 n.8 (Pa. Cmwlth. 1998). Moreover, it is not clear whether the Superior Court's holding in Ackley applies to Petitioner's case because the Ackley decision adopts the Supreme Court's analysis of the punitive effects of Megan's Law II's notification provisions in Gomer Williams, 832 A.2d at 976, which did not require notification to the public via the internet. Ackley, 58 A.3d at 1287. Whether disclosure on the internet is more punitive than previous notification measures, as Petitioner alleges here, was not addressed by the Superior Court. Additionally, the Superior Court in Ackley emphasized that the petitioner could receive relief in 2029 to the internet notification provision under Section 9795.5 of Megan's Law III, 42 Pa. C.S. § 9795.5 (expired December 20, 2012, pursuant to 42 Pa. C.S. § 9799.41). Ackley, 58 A.3d at 1287-88. That expired provision has no counterpart in SORNA.

More recently, in Commonwealth v. Perez, 97 A.3d 747, 760 (Pa. Super. 2014), the Superior Court declined to consider whether the Pennsylvania Constitution provides greater protections than the United States Constitution as it relates to SORNA. Although the majority opinion in Perez does not discuss SORNA's internet notification provision, the concurring opinion of Judge Donohue expresses concern over the impact of internet notification. Judge Donohue reasoned:

Yesterday's face-to-face shaming punishment can now be accomplished online, and an individual's presence in cyberspace is omnipresent. The public internet website utilized by the Pennsylvania State Police broadcasts worldwide, for an extended period of time, the personal identification information of individuals who have served their "sentences." This exposes registrants to ostracism and harassment without any mechanism to prove rehabilitation—even through the clearest proof. In my opinion, the extended registration period and the worldwide dissemination of registrants' information authorized by SORNA now outweighs the public safety interest of the government so as to disallow a finding that it is merely regulatory. . . . This, to me, is the closest of cases. Had Perez not conceded that the first prong of the Smith test had been met, my decision in his

*(Continued…)*

provide support for its averment that Petitioner's ex post facto claim under the Pennsylvania Constitution has been rejected by courts within this Commonwealth. At this early stage of these proceedings, and given the lack of specificity in the PSP's POs, we cannot say with certainty that Pennsylvania Constitution's Ex Post Facto Clause does not provide more protection than its federal counterpart with regard to the internet notification provision of SORNA. Accordingly, we overrule the PSP's POs with regard to this claim.

### 6. Plea Agreement

Petitioner alleges that his 1994 guilty plea established a contract with the Commonwealth and that imposition of SORNA upon him violates his rights under the Contract and Due Process Clauses of the Pennsylvania and United States Constitutions by imposing penalties beyond the terms of his negotiated plea agreement. With regard to Petitioner's due process allegation, the Superior Court addressed similar issues in Commonwealth v. Benner, 853 A.2d 1068 (Pa. Super. 2004). Our decision in Haigh, cited by the PSP, adopted the Superior Court's reasoning in Benner. Haigh, slip op. at 4. In that case, Benner pled guilty in 1999 to a crime that carried a registration requirement of ten years under Megan's Law I. Benner, 853 A.2d at 1071. Benner was released from prison in 2003, after Megan's Law I was repealed and replaced with Megan's Law II, which required Benner to register for his lifetime. Id. at 1069. Benner argued that he should not be subject to the lifetime registration requirements of Megan's Law II because he

---

case may have been different. Moreover, *a challenge under the Pennsylvania State Constitution may have yielded a different result*.

Perez, 97 A.3d at 765-66 (Donohue, J., concurring) (emphasis added).

entered a plea agreement, purportedly on the representation of the District Attorney, that Benner would avoid having to register under Megan's Law I. Id. at 1069. Benner asserted that requiring him to do so would render his plea agreement involuntary and sentence illegal. Id. The Superior Court rejected Benner's argument and held that

> because the registration requirements under Megan's Law impose only collateral consequences of the actual sentence, their application is not limited by the factors that control the imposition of sentence. Thus, while a defendant may be subject to conviction only under statutes in effect on the date of his acts, and sentence configuration under the Guidelines in effect on that same date, the application of the registration requirements under Megan's Law is not so limited.

Id. at 1072. The Superior Court concluded that, because the registration requirements were not punitive, the imposition of a lifetime registration requirement upon Benner did not violate his due process rights. Id. at 1070-71.

We find the Superior Court's reasoning in Benner persuasive and conclude that due process does not require lifting the registration requirements of SORNA by virtue of Petitioner's 1994 plea agreement. Petitioner did not know of the registration requirements of Megan's Law at the time of his plea, but this lack of knowledge did not vitiate his plea or limit the collateral consequence of this sentence. Accordingly, we shall sustain the PSP's demurrer to Petitioner's due process claims regarding his plea agreement.

The PSP did not, however, object to Petitioner's allegation that the imposition of SORNA upon him violates the Contract Clauses of the United States

33

and Pennsylvania Constitutions as it impairs the obligation contained in his 1994 plea agreement. Accordingly, the PSP must answer this claim.

## V. Conclusion

For the foregoing reasons, we hold as follows: (1) the PSP's preliminary objection in the nature of a demurrer to Petitioner's allegations that SORNA's irrebuttable presumption and his inability to challenge whether he is currently a recidivism risk violates his procedural due process rights under the Pennsylvania Constitution is overruled; (2) the PSP's preliminary objection in the nature of a demurrer to Petitioner's substantive due process challenge under the Pennsylvania Constitution is overruled; (3) the PSP's preliminary objection in the nature of a demurrer to Petitioner's challenge to SORNA's internet notification provision under the Ex Post Facto Clause of the Pennsylvania Constitution is overruled; (4) the PSP did not object to Petitioner's Contract Clause allegation, which must be answered; and (5) the PSP's preliminary objections are sustained with regard to the remainder of Petitioner's claims and these claims are dismissed with prejudice.

_____
**RENÉE COHN JUBELIRER, Judge**

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Gregory S. Person,             :
                                   :
            Petitioner      :
                                     :
           v.                   :      No. 222 M.D. 2013
                                     :
Pennsylvania State Police Megan's    :
Law Section,                    :
                                     :
           Respondent    :

## O R D E R

**NOW**, November 3, 2015, the Pennsylvania State Police Megan's Law Section's (PSP) Preliminary Objections to the Second Amended Petition for Review in the above-captioned matter are **OVERRULED**, in part, and **SUSTAINED**, in part, as follows:

(1) The PSP's preliminary objection in the nature of a demurrer to Gregory S. Person's (Petitioner) procedural due process challenges under Article I, Sections 1 and 11 of the Pennsylvania Constitution in relation to the Sexual Offender Registration and Notification Act's (SORNA) irrebuttable presumption and his inability to challenge whether he is currently a recidivism risk as set forth in the Second Amended Petition for Review is **OVERRULED**;

(2) The PSP's preliminary objection in the nature of a demurrer to Petitioner's substantive due process challenge under the Pennsylvania Constitution as set forth in the Second Amended Petition for Review is **OVERRULED**;

(3) The PSP's preliminary objection in the nature of a demurrer to Petitioner's ex post facto challenge to SORNA's internet notification provision, 42 Pa. C.S. § 9799.28(a), under the Pennsylvania Constitution as set forth in the Second Amended Petition for Review is **OVERRULED**;

(4) The PSP shall file an Answer to Petitioner's claims set forth in Petitioner's Second Amended Petition for Review, that SORNA violates procedural and substantive due process under the Pennsylvania Constitution, impairs the obligations contained in his 1994 plea agreement in violation of the Contract Clauses of the United States and Pennsylvania Constitutions, and that Section 9799.28(a) of SORNA is an ex post facto law under the Pennsylvania Constitution within thirty (30) days of the date of this Order;

(5) The PSP's preliminary objections are **SUSTAINED** with regard to the remaining claims set forth in the Second Amended Petition for Review; and

(6) Petitioner's remaining claims are **DISMISSED WITH PREJUDICE**.

_____

**RENÉE COHN JUBELIRER, Judge**